Jones, J.
 

 While the plaintiff denied entering into the contingent contract set forth in the answer, in the disposition of this case we shall assume that he did so as found by the trial court. The precise legal question to be determined is whether, under our Workmen’s Compensation Law, such contracts are valid. “In England, in accordance with the common law rule, agreements between attorney and client for a fee contingent on the success of the litigation are held invalid on the ground of champerty.” 2 Ruling Case Law, 1039, Section 121. In this country, the weight of au
 
 *202
 
 thority recognizes the validity of contracts for contingent fees; and they have been sustained in this state in several cases, the last being
 
 Roberts et al., Partners,
 
 v.
 
 Montgomery,
 
 115 Ohio St., 502, 154 N. E., 740. However, neither that nor any other Ohio case considered the validity of contracts for fees under our Workmen’s Compensation Law; nor did they involve private contracts where awards were payable out of the State Insurance Fund, in which the state has a peculiar interest as trustee of the fund. Counsel for defendants in error concede that there are “no Ohio cases dealing with contingent fees in Workmen’s Compensation cases.” We are therefore called upon to pass upon the validity of such contracts and to decide whether they can be sustained under our Constitution and our existing laws.
 

 The chief purpose of the provisions of our state Constitution relating to workmen’s compensation was to levy compulsory contributions upon employers for the purpose of providing compensation to workmen or their dependents. Section 35, Article II of our organic law declares that purpose and commits its enforcement to the legislative branch of the government. It .provides that
 
 laws may be passed
 
 establishing a state fund and administered by the state; that the Legislature may determine
 
 “the terms and conditions upon which payment shall be made
 
 therefrom.” Pursuant to this constitutional provision the Legislature passed various laws for the safeguarding of the State Insurance Fund, for the payment of the just claims of workmen injured in industry, and for payment of the claims of their dependents in case of such workmen’s death.
 

 The terms of the contingent contract here under consideration authorize an equal division, between attorney and client, of the amount of any award thereafter made by the Industrial Commission. After obtaining a favorable judgment in the trial court, the claimant received an award in the sum of $1456. Of that
 
 *203
 
 amount, Ms attorneys, under their contract, obtained the sum of $700, in addition to a fee of $195.60, which, at the instance' of the attorneys, the trial judge fixed under Section 1465-90, General Code. The award and fee were paid out of the State Insurance Fund.
 

 Section 1465-90, General Code, reads as follows: ‘ ‘ The cost of any legal proceedings, authorized by tMs section, including an attorney’s fee to the claimant’s attorney to be fixed by the trial judge, shall be taxed against the unsuccessful party; provided, however, that such attorney fee shall not exceed twenty per cent of any award up to the sum of five hundred dollars, and ten per cent on all amounts in excess thereof, but in no event shall such fee exceed the sum of five hundred dollars.” Under the above quoted section the trial judge has discretion to fix the fee within the percentages named, basing the amount fixed upon the nature and character of services rendered by the attorneys; however, he is precluded in any case from fixing a fee exceeding the sum of $500. It is clear that any private contract which entails the payment of a greater fee than that specified by statute is invalid; for if claimant and attorney are permitted to fix fees it would nullify and render ineffectual that clause authorizing the trial judge to do tMs. The legislature has seen fit to lodge that power in a judicial officer, having in mind the constitutional mandate empowering it to determine
 
 “the terms and conditions upon which payment shall be made”
 
 from the fund. The trial court, by statute, has the sole power of fixing such fees.
 
 Industrial Commission
 
 v.
 
 Nelson,
 
 127 Ohio St., 41, 186 N. E., 735. The statute prescribes that “in no event shall such fee exceed the sum of five hundred dollars”; yet under this particular contract the attorneys received as fees the sum of $895.60, when they were only entitled to the amount fixed by the court for their services. If the defendant attorneys relied upon their contract for fee remuneration, we
 
 *204
 
 fail to comprehend why they applied to the trial judge for fees, thereby recognizing the judge’s authority to fix them in compliance with the provisions of Section 1465-90, General Code.
 

 Many states have adopted statutes controlling fees paid in workmen’s compensation cases and, where it appears that fee contracts are controlled or inhibited by state law, they have been held to be unenforceable, and if money has been paid thereon by a claimant to an attorney, it may be recovered by the claimant.
 
 Sarja
 
 v.
 
 Pittsburgh Steel Co.,
 
 154 Minn., 217, 191 N. W., 742;
 
 Gritta’s (dependents’) Case,
 
 241 Mass., 525, 135 N. E., 874. Laws fixing compensation in workmen’s compensation cases must be read into any private contract between claimant and counsel. In the instant case, the contingent contract contemplates payment of money out of the State Insurance Fund. The contributing employers and the state, both, have an interest in the collection and distribution of the fund, or, as expressed in the language of the constitution, in “the terms and conditions upon which payment shall be made therefrom.” The state is the trustee of the fund and is empowered to administer it. In a Michigan case, the principle applying is well stated in the third proposition of the syllabus as follows: “Compensation payable to injured employee under provisions of Workmen’s Compensation Act is not private matter between employer and employee, but public is interested; said act declaring state policy regarding personal injuries caused by industrial accidents.”
 
 Harrington
 
 v.
 
 Department of Labor,
 
 252 Mich., 87, 233 N. W., 361.
 

 Pursuant to its constitutional mandate, the Legislature adopted not only Section 1465-90 but adopted also Section 1465-111, General Code (114 Ohio Laws, 790), which reads: “The industrial commission shall have authority to inquire into the amounts of fees charged employers or claimants by attorneys, agents or rep
 
 *205
 
 resentatives for services in matters before tbe industrial commission, to make rules concerning the payment of fees, to protect parties against unfair fees, and to fix the amount of fees in the event Of a controversy in respect thereto.” '
 

 An overwhelming number of compensation cases never reach the courts but are settled by the final order of the commission awarding compensation from which no appeal can be taken; and undoubtedly this section applies to that class. For that group the Legislature has authorized the commission to be the administrative authority for controlling disputed fees payable out of the state fund, thus clearly showing the legislative intention that the duty of fixing such fees rests in the commission and is not to be controlled by private contract.
 

 The state has not only assumed to control and limit the amount of attorney fees, but has also limited the amount of expenses payable for medical, nursing and hospital services, and for funeral expenses in case of death. Section 1465-89, General Code, provides that in no event shall medical, nursing and hospital services exceeding the sum of $200 be payable out of the fund, except upon unanimous approval of the commission; and that funeral expenses shall not be distributed from the fund in an amount exceeding $200. In
 
 Industrial Commission
 
 v.
 
 Klaff,
 
 123 Ohio St., 451, 175 N. E., 697, an attempt was made by a claimant to obtain medical and hospital expenses incurred by him in excess of $200. This court held that the statute controlled and that $200 was the limit of recovery unless an excess allowance was made with the unanimous approval of the Industrial Commission expressed in its minutes.
 

 This policy of protecting the rights of claimants and preserving their compensation is also exemplified by the adoption of Section 1465-88, General Code, which reads: “Compensation before payment shall be ex
 
 *206
 
 empt from all claims of creditors and from any attachment or execution, and shall be paid only to such employes or their dependents.” The sections alluded to —those authorizing the fixing of attorney fees by the trial judge and the fixing of medical, hospital, nursing and funeral' expenses by the commission — evince the purpose declared by our Constitution and by our statute law of controlling the distribution of the State Insurance Fund and of preventing payments therefrom except upon “the terms and conditions” employed in the Workmen’s Compensation Act. This purpose is the pole star of our state Constitution and is the declared policy underlying our workmen’s compensation scheme.
 

 We can have no clearer instance of evasion of that policy than is shown in the instant case. Referring to the character of services rendered before the commission and in his court, the court, in its journal entry, found “that the plaintiff’s claim before the Industrial Commission did not call for any extraordinary services, nor was its prosecution difficult and unusual in the court.” The amount of the award was $1456. The amount received by the attorneys was $700 plus $195.60 received from the fees fixed by the judge, resulting in the injured man receiving but $756 while his attorneys obtained $895.60. The trial court in its entry also found that when the defendants entered into the contingent contract with the plaintiff they did not advise the claimant that, in such cases, the law had provided for an attorney fee out of the insurance fund; and they did not inform the judge of the existence of any contract for fees at the time they made their application for fees to him. This case furnishes an illustration of what may be done in similar cases were we to sustain the lower courts.
 

 This was not a total disability award. Let us assume that it was; that a bread-winner maimed for life, or that his widow with minor children, was the claim
 
 *207
 
 ant, and that a similar fee contract was under consideration by this court. We can conceive of no state court of last resort, functioning under a constitution and law similar to our own, that would sustain an equal division in the proceeds awarded to the bread-winner or to his widow. With a knowledge of the facts and a better acquaintance! with the law, the lawyer occupies a tremendous advantage over the claimant, which it is possible for the former to capitalize. The Industrial Commission and the court have been invested with statutory authority controlling distribution of the fund. If the lawyer, the physician, the hospital or the mortician deem their services not justly compensated under existing laws, they should apply for relief, not to the courts, but to the legislature of the state.
 

 The trial court improperly held that the defendants were not entitled to the fee of $195.60 fixed by it; and also erred in holding that plaintiff was not entitled to the sum of $700 paid to defendants out of the award under their contingent contract. In affirming the trial court the Court of Appeals also erred. The judgments of the lower courts are therefore reversed, and proceeding to render the judgment the trial court should have rendered, it is ordered and adjudged that the plaintiff in error recover from the defendants in error the sum of $700 as prayed for, and the cause will be remanded to the trial court for execution of this' judgment.
 

 Judgment reversed.
 

 Weygandt, C. J., Stephenson, Williams and Zimmerman, JJ., concur.
 

 Matthias, J., not participating.