Taft, J.
In In re Estate of Newland, supra (47 Ohio Law Abs., 252—opinion of Probate Court reported in 47 Ohio Law Abs., 246, 70 N. E. [2d], 234), the question involved was the validity of a gift as a gift causa mortis. We will therefore consider first whether there was a valid gift causa mortis in the instant case.
*454 . Generally, except by means of a valid trust for the benefit of a donee or donees as hereinafter pointed out, there can be no gift where the donor has not relinquished all dominion and control over the property given. See Worthington, Admr., v. Redkey, Exr. (1912), 86 Ohio St., 128, 99 N. E., 211, and Union Trust Co. v. Hawkins, Admr. (1929), 121 Ohio St., 159, 167 et seq., 167 N. E., 389, 73 A. L. R., 190.
Thus, usually there can be no gift subject to any right of revocation that may enable the donor to get back the property given to the donee; and, where recognized, gifts causa mortis represent an exception to this general rule. Annotations, 3 A. L. R., 902, 916, and 60 A. L. R., 1054, 1056; 24 American Jurisprudence, 733, Section 5.
As stated in paragraph one of the syllabus of Gano v. Fisk (1885), 43 Ohio St., 462, 3 N. E., 532, 54 Am. Rep., 819:
“Gifts causa mortis have the nature of a legacy, and the policy of our law does not favor them while there is provision, by the statute of wills and the law of descents, for the transmission of all property rights.”
In the Newland case, the courts found that the decedent clearly stated an intention to vest the title to the property given in the donee at the time of its delivery, although such title was to be subject to conditions subsequent, such as revocation by the donor during his life or the recovery of the donor from the illness inducing the gift. However, the court recognized that there could have been no valid gift causa mortis if the donor had expressed an intention that title was not to vest in the donee until the donor’s death.
Also, the weight of authority supports the conclusion that there can be no valid gift causa mortis, whether delivery is to the donee or to a third person to deliver to the donee, if the death of the donor is a condition precedent to vesting of title in the third person or in the donee. Brown on Personal Property (2 Ed.), 152 et seq., Section 53. See Basket v. Hassell (1882), 107 U. S., 602, 27 L. Ed., 500, 2 S. Ct., 415.
The findings of the Probate Court, as trier of the facts in the instant case, indicate that Adams’ death was to be a condition precedent to the vesting of any title to the check or its proceeds. Thus, that court found that Adams instructed Sidney *455 Fleck that “the check was to be held, uncashed” until “Adams did not survive”; and Sidney Fleck, on giving the check to Charles Fleck, said, “Do not pay any money out on this. Hold the check for him [Adams] and give it to the children if anything happens to him.” Admittedly the check was not cashed until after Adams ’ death.
Defendants stress the fact that the check was endorsed in blank when delivered by Adams to Sidney Fleck. However, Section 1301.18, Revised Code, provides in part :
“As between immediate parties, and as regards a remote party, other than a holder in due course, # * * the delivery may be shown to have been conditional or for a specific purpose only, and not for the purpose of transferring the property in the instrument. ’ ’
In overruling defendants ’ motion for reconsideration of the separate findings of fact and conclusions of law, the Probate Court added to the findings of fact a paragraph reading:
“The testimony of Sidney Fleck the court finds truthfully given and the relevant probative facts therein related are true. ’ ’
From some of that testimony, it might reasonably be inferred that, when the check was delivered to Sidney, Adams expressed an intention that title was to vest subject only to divestiture if Adams recovered. On the other hand, there are other parts of that testimony from which it may reasonably be inferred that Adams then expressed an intention that his death was to be a condition precedent to the vesting of that title. Certainly, Fleck’s testimony does not amount to the clear and convincing evidence necessary to support a gift cause mortis. As stated by Follett, J., in Gano v. Fisk, supra (43 Ohio St., 462):
“Gifts causa mortis are not favored, and such gifts must be clearly proved. The civil law sought to prevent fraud in such gifts, and required their execution in the presence of five witnesses, to render them valid. Great strictness and clear proof to establish such gifts have been required by the English courts, and litigation as to them has been extensive and hostile.
“Such a gift can be upheld only when the intention of the donor is definite and-certain * *
See also Flanders v. Blandy (1887), 45 Ohio St., 108, 113, 12 N. E., 321 (“to support them clear and convincing evidence is *456 required”); Bolles v. Toledo Trust Co., Exr. (1936), 132 Ohio St., 21, 27, 4 N. E. (2d), 917; Brown on Personal Property (2 Ed.), 166, Section 56.
Streeper, Admr., v. Myers (1937), 132 Ohio St., 322, 7 N. E. (2d), 554, and Patrick v. Parrott (1915), 92 Ohio St., 184, 110 N. E., 725, relied upon by defendants, involved inter vivos gifts, not gifts causa mortis. Furthermore, each represents a case in which there was clear and convincing evidence of the gift sustained. For example, in the Streeper case, the donor had the certificates of deposit reissued in the names of the donees, and, in the Parrott case, the donor had duly executed formal deeds conveying the lands given to the donees. There is not even anything in writing in the instant case to indicate who were to be the donees and how much each was to get; and there was also no disinterested testimony in the instant case tending to support the claimed gift as in the Newland, Streeper and Parrott cases.
It may be observed that, although this court has sometimes considered, as in Gano v. Fisk, supra (43 Ohio St., 462), whether certain facts were sufficient to establish a gift causa mortis, this court has never actually held in any case reported with an opinion that there can be that kind of a gift under the law of this state. But see description in 41 Weekly Law Bulletin, 343, of South v. Fair which is reported without opinion in 60 Ohio St., 595.
As hereinbefore suggested, there may in effect be a gift to a donee if a valid trust for the benefit of that donee is established, even if the donor, who is the settlor of such trust, retains a life interest in and almost complete dominion and control over the property given. See annotations, 32 A. L. R. (2d), 1270, and 164 A. L. R., 881.
Thus, in paragraph two of the syllabus of First National Bank of Cincinnati, Exr., v. Tenney (1956), 165 Ohio St., 513, 138 N. E. (2d), 15, 61 A. L. R. (2d), 470, it is said:
“An inter vivos trust which reserves to the trustor the income for life and an absolute power to revoke during his lifetime, with a remainder over at his death, creates in the remainderman a vested interest subject to defeasance by the exercise of the power to revoke.”
Those who endeavor to find a reasonable explanation for *457 legal conclusions have had difficulty for quite some time in explaining how, by setting up a trust, an owner of property can in effect make a gift of it although he does not relinquish any right to its enjoyment during his lifetime and also retains the right during his life to change his mind about the gift and get back what he has given. See Brown on Personal Property (2 Ed.), 175, 176, 179, 180, Section 57.
That this court has had the same difficulty is quite evident from the opinions in Union Trust Co. v. Hawkins, Admr., supra (121 Ohio St., 159); Cleveland Trust Co., Trustee, v. White (1938), 134 Ohio St., 1, 15 N. E. (2d), 627, 118 A. L. R., 475; Schofield, Trustee, v. Cleveland Trust Co. (1939), 135 Ohio St., 328, 21 N. E. (2d), 119; Central Trust Co. v. Watt (1941), 139 Ohio St., 50, 38 N. E. (2d), 185; Bolles v. Toledo Trust Co., Exr. (1944), 144 Ohio St., 195, 58 N. E. (2d), 381, 157 A. L. R., 1164; and Harris v. Harris, a Minor (1947), 147 Ohio St., 437, 72 N. E. (2d), 378. Cf. Bauman v. Walter (1953), 160 Ohio St., 273, 276, 277, 116 N. E. (2d), 435.
Those who promulgated the Restatement of the Law of Trusts apparently also had the same difficulty. Thus, in Section 57 of the original Restatement, it is stated that “where the settlor * * * reserves not only a beneficial life estate and a power to revoke and modify the trust but also such power to control the trustee as to the details of the administration of the trust that the trustee is the agent of the settlor, the disposition so far as # # intended to take effect after his death is testamentary and * * * invalid” if there is not compliance with the statutes relating to wills.
In the 1947 revision of Section 57, it is stated that such a “trust is not testamentary merely because” of such reserved powers “unless the terms are so informally stated and the power of control reserved is so great that it would violate the policy of the statute of wills to enforce it.” See 1 Scott on Trusts (2 Ed.), 450, Section 57.2.
In Section 57 of the Restatement of the Law of Trusts (2d), adopted in 1957, this “unless” limitation is entirely omitted.
"With respect to this problem, it is stated in 1 Scott on Trusts (1960 Supp., 2 Ed.), 450, Section 57.2:
“In determining whether an agency rather than a trust *458 is created, consideration is given not merely to the extent of the powers reserved by the settlor, but also to the nature of the instrument, if any, which directs the disposition of the property to be made on the donor’s death. The purpose of the statute of wills in requiring certain formalities is to prevent fraudulent claims. If the disposition is evidenced by a formal trust instrument, the danger of fraud is not increased by the fact that the settlor may have reserved extensive powers.”
See Restatement of the Law of Trusts (1935), Section 57, comment g; Rose v. Union Guardian Trust Co. (1942), 300 Mich., 73, 1 N. W. (2d), 458; Stouse v. First National Bank of Chicago (Ky., 1951), 245 S. W. (2d), 914, 32 A. L. R. (2d), 1261; Sheasley Trust (1951), 366 Pa., 316, 77 A. (2d), 448.
Although this court has gone far in recognizing inter vivos trusts as valid, even though they do not take away from the donor until his death either the income from the trust property or even the right to get it back, this has been done only in those cases where there has been a formal trust instrument that definitely eliminated any question as to the donor’s intention.
Probably, it is no more radical to regard such a formal instrument, definitely establishing a donor’s intention, as a judicially sanctioned substitute for the statutorily required formalities of a will than it is to regard part performance of a contract to convey real estate as a judicially sanctioned substitute for the written memorandum required by the statute of frauds.
Certainly, because of our statutes relating to wills, no trust can effect a valid gift of property and also enable the donor to retain during his life substantial rights in that property and substantial rights of dominion and control over that property, unless such trust and its terms are definitely established by clear and convincing evidence. Cf. Gano v. Fisk, supra (43 Ohio St., 462). See also Bolles v. Toledo Trust Co., supra (132 Ohio St., 21). In the instant case, it is not necessary to determine, and we do not intend to express an opinion, as to whether, in the absence of a formal trust instrument establishing the trust, there could ever be sufficient evidence to justify recognition of the validity of such a trust.
*459 In our opinion, the evidence in the instant case certainly does not clearly or convincingly establish both the existence and the definite terms of the trust claimed by defendants.
From what we have said, it is apparent that, on Adams’ death, the $6,000 check became an asset of his estate.
However, defendants contend that they can be required to pay no more than $3,730 of the proceeds of the $6,000 cheek because they had an attorney’s lien against the $6,000 check and its proceeds to the extent of $2,000 for attorneys’ fees rendered and $270 for expenses incurred in asserting the claim and effecting the settlement that produced that check.
This contention is based upon Sidney Fleck’s testimony that, before the settlement was made, he explained to Adams “that he would get approximately $4,000 less the expenses in the case for his share” of the $6,000 settlement and that Adams said “that would be all right.”
Since, on Adams’ death, the check became an asset of his estate, defendants thereafter had no right to cash it, and, therefore, defendants hold any proceeds received on cashing it as constructive trustees for Adams’ estate.
Even if their claim for fees and expenses had been secured by a lien against that check and its proceeds (but see Section 4123.67, Revised Code), their lien did not give defendants the right as against Adams’ estate to appropriate its amount from the proceeds of that check by self-help as they did immediately after Adams’ death.
It may be reasonably contended that the claim of Adams’ administratrix could, to use the words of Section 2309.19, Revised Code,* be “deemed compensated” by the amount of defendants’ claim for attorneys’ fees. However, in order to effect a reduction in Adams’ administratrix’ claim for $6,000 by any amount on account of defendants’ claim for attorneys’ fees, it was necessary for defendants to establish *460 the amount due them for such attorneys’ fees, and the burden of alleging and proving the existence and amount of such counterclaim for attorneys’ fees was on defendants.
It may be noted that there is little evidence in the record as to what defendants’ services were and no evidence as to the reasonableness of $2,000 as a charge therefor.
Furthermore, Section 4123.06, Revised Code, reads in part:
“The Industrial Commission shall * * * fix the amount of, fees in the event of a controversy in respect thereto.”
Thus, where a controversy arises as to the amount of an attorney’s fee for legal services in asserting and effecting settlement of a claim against the Industrial Commission, such attorney cannot assert a claim for such fee in any amount not fixed therefor by the Industrial Commission in accordance with the provisions of Section 4123.06, Revised Code.
By claiming the $6,000 check or all its proceeds as an asset of the estate, Adams’ administratrix has certainly raised a controversy in respect to the fees claimed by defendants.
Since defendants did not either allege or prove that the Industrial Commission fixed any amount for their fees, defendants did not establish a claim on account of their fees in any amount and they are not entitled to a lien in any amount against the $6,000 check or its proceeds. See also Adkins v. Staker (1935), 130 Ohio St., 198, 205, 198 N. E., 575.
In our opinion, what testimony there is in the record about the $270 of expenses which defendants claim to have incurred is too vague to support defendants’ claim to a lien on account thereof against the $6,000 check or the proceeds thereof.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Matthias, Bell, Herbert and O’Neill, JJ., concur.

“When cross-demands have existed between persons under such circumstances that if one had brought an action against the other a counterclaim [see Section 2309.16, Revised Code] could have been set up, neither can be deprived of the benefit thereof by assignment by the other, or by his death. The two demands must be deemed compensated so far as they equal each other.”