In re SUBURBAN MOTOR FREIGHT, INC., Debtor.

Stephen K. YODER, Trustee, Plaintiff–Appellant,

v.

OHIO BUREAU OF WORKERS' COMPENSATION, Defendant–Appellee.

No. 92–3423.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 4, 1992.

Decided June 29, 1993.

Before: MILBURN and BATCHELDER, Circuit Judges, and LIVELY, Senior Circuit Judge.

BATCHELDER, Circuit Judge.

## I.

Suburban Motor Freight went into bankruptcy owing premiums to the Ohio Bureau of Workers' Compensation. When the Bureau filed a proof of claim classifying the unpaid premiums as excise taxes under 11 U.S.C. § 507, the Trustee, Stephen Yoder, filed an objection, maintaining that these premiums were in fact fees, and not entitled to priority. The Bankruptcy Court found that the premiums were entitled to priority status, 134 B.R. 617, and the District Court affirmed, 156 B.R. 790. The Trustee appeals; we affirm.

## II.

 The Bankruptcy Code [1] gives priority to certain "allowed unsecured claims of governmental units"; among other things, it gives priority to "an excise tax on ... a [prepetition] transaction." 11 U.S.C. § 507(a)(7)(E). The Code does not grant "governmental units" priority on all of their claims against debtors, however; creditors of all stripes must directly tie their priority claims to specific provisions of the statute. *United States v. Embassy Restaurant, Inc.*, 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959).

 For the purposes of priority under the Bankruptcy Act, the Supreme Court in 1941 defined taxes [2] as including

those pecuniary burdens laid upon individuals or their property, regardless of consent, for the purpose of defraying the expenses of government or of undertakings authorized by it.

*City of New York v. Feiring*, 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941). The Court has defined "fees" for

Quintin F. Lindsmith (argued and briefed), Harry Wright, IV (briefed), Bricker & Eckler, Columbus, OH, for plaintiff-appellant.

Gregory S. Severance (argued), Office of the Atty. Gen. of Ohio, Larry Rhodebeck (briefed), Columbus, OH, for defendant-appellee.

1. Title 11 of the United States Code.

2. We recognize, of course, that Congress·.has changed· the law of bankruptcy in considerable measure since 1941; nonetheless, taxes have consistently been entitled to priority status, and

the *Feiring* definition still applies in attempting to distinguish "taxes" from other types of exactions or payments in the bankruptcy context. *See, for example, In re Cassidy*, 983 F.2d 161, 163 (10th Cir.1992) (applying *Feiring* definition).

bankruptcy purposes as monies being paid to the Government "incident to a voluntary act" such as applying to the bar or obtaining a broadcast license, since such payments "bestow[ ] a benefit on the applicant, not shared by other members of society." *National Cable Television Ass'n, Inc. v. United States,* 415 U.S. 336, 340–41, 94 S.Ct. 1146, 1149, 39 L.Ed.2d 370 (1974). The question is one of Federal law; state characterizations of workers' compensation premiums, whether judicial or legislative, have no binding effect on how such premiums must be characterized for bankruptcy purposes. *Feiring,* 313 U.S. at 285, 61 S.Ct. at 1029.

The courts have disagreed as to whether a bankrupt's unpaid workers' compensation premiums constitute "excise taxes" which the Government may collect from the estate ahead of other creditors.[3] Courts which have looked at the issue in the context of the Ohio workers' compensation system have generally held unpaid premiums to be taxes, *see In re Carlton Enterprises, Inc.,* 103 B.R. 876 (Bankr.N.D.Ohio 1989); *In re Tri–Manufacturing and Sales Co.,* 82 B.R. 58 (Bankr. S.D.Ohio, W.Div.1988); *In re Primeline Industries, Inc.,* 103 B.R. 861 (Bankr.N.D.Ohio 1987); *In re International Automated Machines, Inc.,* 9 B.R. 575 (Bankr.N.D.Ohio, W.Div.1981); with only one exception, *see In re Smith Jones, Inc.,* 36 B.R. 408 (Bankr. D.Minn.1984). Even though the result generally has been the same from case to case, the reasoning behind these decisions has unfortunately lacked consistency.

The Circuits which have looked at this issue have disagreed as to whether workers' compensation premiums are entitled to priority. Largely, their conclusions have turned on whether an individual State's program is monopolistic, requiring the participation of all employers operating within the State, or whether the state system merely "competes" with private insurers or requires employers to get private insurance. *Compare New Neighborhoods v. West Virginia Workers' Compensation Fund,* 886 F.2d 714 (4th Cir. 1989) (West Virginia system is monopolistic

and mandatory, thus premiums owed the State are excise taxes entitled to priority) *with Brock v. Washington Metropolitan Area Transit Authority,* 796 F.2d 481 (D.C.Cir.1986), *cert. denied,* 481 U.S. 1013, 107 S.Ct. 1887, 95 L.Ed.2d 494 (1987) *and In re Metro Transportation Company,* 117 B.R. 143 (Bankr.E.D.Pa.1990) (holding that premiums are "fees" rather than taxes for bankruptcy purposes due to competition in Washington, D.C. and Pennsylvania workers' compensation systems respectively). The theory goes that where the State has intended to supplant all private forms of workers' compensation insurance, to centralize the system and to force all employers to participate on pain of legal sanctions, the coercive and universal nature of the state program makes payments it collects more akin to taxes than to fees or insurance premiums, which are paid voluntarily.

Some courts, however, have allowed a rather problematic criterion to sneak into their analyses; namely, that the defining feature of a tax is its "public purpose." The Bankruptcy Court opinion being appealed here, affirmed by the District Court, followed one such pronouncement by the Ninth Circuit, *In re Lorber Industries of California,* 675 F.2d 1062 (9th Cir.1982). *Lorber* defined four elements which "characterize the exaction of a tax" for bankruptcy priority purposes:

(a) An involuntary pecuniary burden, regardless of name, laid upon individuals or property;

(b) Imposed by, or under the authority of the legislature;

(c) For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it;

(d) Under the police or taxing power of the state.

*In re Lorber Industries,* 675 F.2d at 1066. Both parties at bar cite *Lorber* and ask us to make it the law in the Sixth Circuit; howev-

---

**3.** The premiums would classify as "excise" taxes since the payments are not directly assessed like an income tax but are indirectly assessed, the employer's obligation "aris[ing] through the

transaction or act of employing." *New Neighborhoods v. West Virginia Workers' Compensation Fund,* 886 F.2d 714, 719 (4th Cir.1989) (citing *In re Payne,* 27 B.R. 809, 814 (Bankr.D.Kan.1983)).

er, their respective interpretations of the *Lorber* elements differ significantly.

The second and fourth "prongs" of the *Lorber* test describe virtually every government program; the first prong raises only the question of involuntariness, which in this case is largely conceded. What is left is the single question of whether money demanded by the Government is to be put toward "public purposes," including "defraying the expenses of government." Needless to say, all money collected by the Government goes toward defraying its expenses, and is used for public purposes.[4] The threat of the *Lorber* reasoning, then, is that the Government automatically wins priority for all money any debtor owes it, regardless of the nature of the payments.

This is not an idle fear. The Fourth Circuit, which commendably tackled the issue at bar in *New Neighborhoods*, 886 F.2d 714, picked up the "public purpose" theme and ran with it in *Williams v. Motley*, 925 F.2d 741 (4th Cir.1991). In that case, Virginia charged motorists who were attempting to register a car, but who had not purchased private auto insurance, an "uninsured motor vehicle assessment" fee. The court held the fee to be a "tax" for bankruptcy purposes since the fee "creates a fund that benefits the general public by reducing the overall cost of ... insurance." *Id.* at 744. We believe that *Williams* amply illustrates the danger that overemphasis on the "public purpose" element will eliminate all distinction between "taxes" and "fees" or other money owed the Government, enabling the Government to prevail consistently against private creditors with arguably equal claims. This would turn on its head the traditionally egalitarian manner in which the Bankruptcy Code has dealt with competing creditors, who by definition fight over very limited assets. Had the Con-

gress intended such a result, it would not have entitled only specifically described unsecured governmental claims to priority, but all government claims.[5]

This Circuit has stood nearly alone in expressing this concern. In *In re Jenny Lynn Mining Co.*, 780 F.2d 585 (6th Cir.), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986), we held that a claim for payment due under a state requirement that mine operators deposit cash or a bond in order to obtain a mining permit could not receive priority as an excise tax. We disagreed with the Bankruptcy Court from which the case was appealed, which had held the deposit to be a tax since "the general public benefited from the payment of permit fees." *Id.* at 589. Public benefit is not the determining factor, we stressed:

> [O]ne purpose of most governmentally imposed fees is to support the agency that administers the program under which the fee is charged, presumably serving some public purpose. If this were the deciding factor, all such fees would be "taxes" for bankruptcy purposes.

*Id.* We instead noted that "the deposit was required because the operator had requested a permit, and the permit bestowed a discrete benefit on the applicant—the privilege of operating a surface mine." *Id.* at 588.[6]

Bearing in mind these concerns, we elect to follow the relatively balanced approach crafted by the Fourth Circuit in *New Neighborhoods v. West Virginia Workers' Compensation Fund,* 886 F.2d 714 (4th Cir. 1989). The Ohio workers' compensation system is, like West Virginia's, monopolistic and mandatory. The Ohio system is administered exclusively by the State, and the law allows for no private insurance option save self-insurance. Ohio Rev.Code Ann.

---

4. Or so they say.

5. We acknowledge, of course, that § 507 also provides priority status for two other types of unsecured claims of governmental units, *viz.*, certain customs duties and obligations of the debtor relative to the maintenance of the capital of an insured depositary institution.

6. In so holding, we distinguished *United States v. River Coal Co., Inc.,* 748 F.2d 1103 (6th Cir.1984) in which we held a Federal "reclamation fee"

collected from all coal strip miners to be a "tax" for bankruptcy purposes. We noted there that the fee was imposed as an additional charge on mine operators who had already received permits, and conferred no additional privilege or benefit upon those operators. This exaction was thus more akin to a tax than to a fee, we reasoned, since the environmental benefits of the fund created by the assessments accrued generally, and not just to the mines.

§§ 4123.82(A), 4123.35(B). Payment of premiums by all employers to the State is "compulsory." Ohio Const. Art. II, § 35; *Adkins v. Staker*, 130 Ohio St. 198, 198 N.E. 575 (1935). The program covers all employees working in the State for loss resulting from work-related injuries. Ohio Const. Art. II, § 35. Where a State "compel[s] the payment" of "involuntary exactions, regardless of name," and where such payment is universally applicable to similarly situated persons or firms, these payments are taxes for bankruptcy purposes. *New Neighborhoods*, 886 F.2d at 718–19 (citations omitted).

Although the Fourth Circuit did weigh the "public purpose" of the West Virginia system along with its centralized and compulsory nature, *see New Neighborhoods*, 886 F.2d at 718–19 (as discussed, the Fourth Circuit subsequently magnified this factor to the point of distortion in *Williams v. Motley*, 925 F.2d 741 (4th Cir.1991)), the court noted that "there is a need carefully to limit priority claims in bankruptcy[ ] ... [since] every priority claim lessens the dividend, if any, of a general [bankruptcy] creditor...." *New Neighborhoods*, 886 F.2d at 719 (citations omitted). The court might have also pointed out, and we will again stress the point, that for this reason creditors must directly tie their priority claims to specific provisions of the Bankruptcy Code. "[I]f one claimant is to be preferred over others, the purpose should be clear from the statute." *Nathanson v. National Labor Relations Board*, 344 U.S. 25, 29, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952). Not much would be left of the Bankruptcy Code's equitable distribution scheme were a creditor able to win priority merely by showing that he would put the money to better use than the next creditor in line.

■ Undoubtedly, Congress provided priority for unpaid tax claims because of the public purpose of tax revenues; the workings of Government cannot await bankruptcy distribution alongside unsecured creditors, with the possibility, even the probability of receiving pennies on the dollar of what the taxpayer-debtor owed. But to say as a matter of definition that all taxes are collected for public purposes does not allow the Government to say that all funds collected for public

purposes are taxes; the converse does not necessarily follow from the premise. Thus, looking at the public purpose of a payment due the Government may help determine whether the payment is akin to a tax, but this must not be the determinative criterion.

■ In the case at bar, we recognize the public purpose of the workers' compensation premiums in the proper context in holding that they are entitled to priority in bankruptcy; since the Ohio system is centralized and universal, "injured employees ... depend upon the financial soundness of the [Workers' Compensation] Fund...." *New Neighborhoods*, 886 F.2d at 719. If the State had an optional participation program, or allowed employers to purchase private liability insurance, it would be unfair and without statutory justification to call state-collected premiums "taxes" and put the Bureau ahead in line while leaving unpaid private insurers to languish along with the rest of the unsecured creditors.

### III.

For the reasons discussed, we therefore hold that unpaid premiums due the Ohio Bureau of Workers' Compensation are entitled to priority in bankruptcy under 11 U.S.C. § 507(a)(7)(E) as "excise taxes." The order of the District Court affirming the judgment of the Bankruptcy Court is affirmed.