**In re Robert T. NAIL, Jr., f/d/b/a Wooden Nail, Debtor.**

**Bankruptcy No. 92–31378.**

United States Bankruptcy Court, E.D. Michigan, N.D.

Jan. 25, 1994.

Carl C. Silver, Alpena, MI, for Debtor.

Martin J. Vittands, Asst. Atty. Gen., Detroit, MI, for MESC.

Thomas W. McDonald, Jr., Chapter 13 Trustee.

### OPINION ON DISCHARGEABILITY OF UNEMPLOYMENT TAX

ARTHUR J. SPECTOR, Bankruptcy Judge.

The issue is whether unemployment contributions owed to the Michigan Employment Security Commission (MESC) are taxes allowable under a § 507(a)(7) priority and hence nondischargeable under § 523(a)(1)(A). I hold that they are.

On September 30, 1991, the Debtor filed a voluntary petition for relief under chapter 7

of the Bankruptcy Code (Case No. 91–31022). The schedules did not list the MESC as a creditor. The case was ultimately closed as a no-asset case with the Debtor obtaining a discharge on January 2, 1992.

On November 2, 1992, the Debtor initiated this case by filing a voluntary petition for relief under chapter 13. Once again, he failed to schedule the MESC as a creditor. However, on January 14, 1993, the Debtor amended his Schedule F (the schedule of creditors holding "unsecured nonpriority claims") to add the MESC, in addition to five other creditors that were originally omitted. The amendment listed the MESC as holding a claim in the total amount of $5,884.88, which the Debtor described as "disputed."

On March 11, 1993, the MESC filed two proofs of claim, one asserting a priority claim in the amount of $1,927.92 and the other a general unsecured claim in the amount of $3,721.97. The claims represent "tax contributions," and interest thereon, owing to the MESC pursuant to Mich.Comp.Laws § 421.-13, which are paid into the state's "unemployment compensation fund." *See* Mich.Comp. Laws § 421.26(a).[1] The oldest tax period listed in the attachments to the proof of claim are for periods within 1989.

The Debtor filed an objection to the MESC's claims, arguing that: (1) the claims were dischargeable in his previous chapter 7 case because "unemployment taxes are not priority taxes under 11 U.S.C. § 507(a)(7) for the reason that they are not a tax measured by income or gross receipts;" and (2) even though the MESC was not scheduled in the first case, its claims were discharged because the case was a no-asset case, citing *In re David,* 106 B.R. 126 (Bankr.E.D.Mich.1989).

The MESC's response did not address the second point, except to note that under § 523(a)(1)(A), if its claims in the prior case were entitled to § 507(a)(7) priority as a tax, they were nondischargeable "whether or not

a claim for such tax was filed or allowed." With respect to the first point, the MESC asserted that its claim in the prior case was an "employment tax on a wage, salary or commission" for purposes of § 507(a)(7)(D).

### DECISION

Section 523(a)(1)(A) states in pertinent part that "[a] discharge under § 727—... does not discharge an individual debtor from any debt—(1) for a tax ... —(A) of the kind ... specified in section ... 507(a)(7)." Subparagraph (D) of the latter section, in turn, accords seventh-level priority status for "allowed unsecured claims of governmental units ... to the extent that such claims are for— ... (D) an employment tax on a wage, salary or commission of a kind specified in [§ 507(a)(3) ] earned from the debtor." 11 U.S.C. § 507(a)(7)(D).

▪ The test for determining whether a governmental claim is a tax was recently articulated by the Sixth Circuit in a case which held that workers' compensation premiums are an "excise tax" subject to priority payment pursuant to § 507(a)(7)(E). A preliminary consideration is whether the funds to be collected serve a "public purpose." *In re Suburban Motor Freight,* 998 F.2d 338, 342 (6th Cir.1993). The court stressed, however, that "this must not be the determinative criterion." *Id.* at 342. Since "all money collected by the Government ... is used for public purposes," *id.* at 341, and since governmental claims are not automatically entitled to priority but must instead be of the type "specifically described" in § 507, *id.,* the court reasoned that additional criteria must be satisfied.

These additional criteria—the only ones which are likely to be disputed in most cases—are whether payment of the liability in question is "mandatory" and whether the "payment is universally applicable to similarly situated persons or firms." *Id.* at 341–42.[2]

---

1. Sections 421.13 and 421.26 are part of the Michigan Employment Security Act, Mich.Comp. Laws § 421.1 *et seq.,* which was enacted pursuant to chapter 7 of the Social Security Act, 42 U.S.C. § 1101 *et seq.* The latter act established a federal unemployment trust fund to provide temporary financial assistance for the unemployed.

States which, like Michigan, administer federally approved unemployment programs receive subsidies from this trust fund.

2. According to the Ninth Circuit, other salient characteristics of a tax obligation are that it is "pecuniary ... [and i]mposed by, or under au-

Surprisingly, however, the Debtor focused only on the threshold, "public purpose" inquiry—the one which *Suburban Motor Freight* viewed as a virtual nonissue. *See* Debtor's Supplemental Brief at p. 1. In support for his dubious contention that unemployment compensation is not designed to benefit the public, the Debtor relied on Mich.Comp.Laws § 421.2, which states in its entirety as follows:

> Declaration of policy. The legislature acting in the exercise of the police power of the state declares that *the public policy of the state is as follows:* Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. *Involuntary unemployment is a subject of general interest and concern* which requires action by the legislature to prevent its spread and to lighten its burden which so often falls with crushing force upon the unemployed worker and his family, to the detriment of the welfare of the people of this state. *Social security requires protection against this hazard of our economic life.* Employers should be encouraged to provide stable employment. *The systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment* by the setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own, *thus maintaining purchasing power and limiting the serious social consequences of relief assistance, is for the public good, and the general welfare of the people of this state.*

Mich.Comp.Laws § 421.2 (emphasis added).

The highlighted portions of the statute quoted above make clear that the unemployment compensation scheme is designed to reduce the strain on the state's welfare programs, and is not solely to benefit recipients. In any event, the public nature of unemployment benefits has already been confirmed in cases that are binding here. *See, e.g., Carmichael v. Southern Coal & Coke Co.,* 301 U.S. 495, 515–19, 57 S.Ct. 868, 875–77, 81 L.Ed. 1245 (1937) (Alabama unemployment compensation law); *Iron Street Corp. v. Unemployment Compensation Comm'n,* 305 Mich. 643, 651, 9 N.W.2d 874 (1943).

Because the Debtor's argument that the MESC claims are discharged rested solely on his assertion that they entail the payment of funds that are not put to public use, his objection to the claims must be denied. *See In re Pierce,* 935 F.2d 709, 711 (5th Cir.1991) ("Unemployment taxes [owed to the Texas Employment Commission] ... have seventh priority [pursuant to § 507(a)(7)(D) ]."); *In re Continental Minerals Corp.,* 132 B.R. 757, 759, 22 B.C.D. 289 (Bankr.D.Nev.1991) ("[T]he claim of the Nevada Employment Security Department [for unemployment compensation contributions] is an employment tax entitled to priority under ... § 507(a)(7)(D)."); *In re Ndosi,* 116 B.R. 687, 689 n. 1, 20 B.C.D. 1250, 23 C.B.C.2d 516 (Bankr.D.Minn.1990) ("The debtors ... concede that unemployment insurance contributions [owed to the Minnesota Department of Jobs and Training] constitute 'an employment tax on a wage, salary or commission' pursuant to 11 U.S.C.A. § 507(a)(7)(D)."); S.Rep. No. 95–989, 95th Cong., 2d Sess. (1978) at p. 70, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5856 ("The employment taxes covered under [§ 507(a)(6)(A)(ii) of the Senate Bill, S. 2266 [3]] are the employer's share of the social security and railroad retirement taxes *and required employer pay-*

---

thority of the legislature ... [u]nder the police or taxing power of the state." *In re Lorber Industries of California,* 675 F.2d 1062, 1066 (9th Cir.1982) (citation omitted). *Suburban Motor Freight* quoted the *Lorber* test, but did not explicitly accept or reject it. *See* 998 F.2d at 340–42. Since the Debtor concedes that the foregoing criteria are satisfied, *see* Debtor's Supplemental Brief at p. 1, I need not consider whether *Lorber* retains any vitality in this circuit.

3. If enacted, this provision would have given sixth priority to "taxes— ... on or measured by employment, production, or use of property, transfers by death, gift, sale, or otherwise, or other transactions or events, if such transaction or event occurred before the date of the filing of the petition, and for which a return or report was last due, including extensions, within 3 years before the date of filing of the petition or thereafter."

**108**

*ments toward unemployment insurance."* (emphasis added)).[4]

For the reasons stated, an order overruling the Debtor's objections to the claims of the MESC will be entered.

---

**4.** The Debtor cited a number of decisions which implicitly or explicitly support his contention that unemployment taxes are dischargeable. *See* Debtor's Brief at pp. 1–3. But these cases do not even purport to address the question of whether such taxes are excepted from discharge by § 523(a)(1)(A). Nor did they need to, as § 523(a) applies by its own terms only to "an individual debtor," and none of the debtors in the cases cited were natural persons. *See, e.g., In re Compton,* 891 F.2d 1180, 1184 n. 7 (5th Cir.1990) (Section 523(a)(3) does not apply to a corporate debtor because it is not an individual.); *In re Trafalgar Assocs.,* 53 B.R. 693, 696 (Bankr. S.D.N.Y.1985) ("[S]ection 523 ... applies only to individual debtors, and not to limited partnerships...."). The cases are therefore not on point.