**In re ARROW TRANSPORTATION CO. OF DELAWARE, Debtor–in–Possession.**

**Bankruptcy No. 397–34556PSH11.**

United States Bankruptcy Court, D. Oregon.

Aug. 6, 1998.

184

David W. Criswell, Portland, OR, for Debtor.

## MEMORANDUM OPINION

POLLY S. HIGDON, Chief Judge.

■ This matter came before the court on the Debtor–in–Possession's objection to a proof of claim filed by the Oregon Department of Transportation. (The "Department"). The Department filed a claim for $82,446.71 of which $75,326.38, which is based on charges imposed under Oregon Revised Statutes ("ORS") 825.474–476 (formerly codified under ORS 767.815–820), it believes is an excise tax and thus holds priority status under § 507(a)(8)(E).[1] The debtor-in-possession objects only to the classification of the $75,326.38 as priority. It contends that the charges are "fees", not "taxes", and are not entitled to priority status.

The applicable state law involves payments required by Oregon of motor carriers for highway use.

ORS. 825.474 provides, in relevant part:

(1) in addition to other fees and taxes imposed by law upon carriers, there shall be assessed against and collected from every carrier a tax for the use of the highways, to apply to the cost of administration of this chapter and for the maintenance, operation, construction and reconstruction of public highways.

(2) The tax rate which shall apply to each motor vehicle shall be based upon the declared combined weight of the motor vehicle and in accordance with the weight group tax rates as shown in the tables set forth in ORS 825.476 . . .

(4) The tax for each motor vehicle when table "A" or "B" is used shall be computed by multiplying the extreme mileage of travel in Oregon by the appropriate weight group tax rate as it appears in the table.

1. Unless otherwise indicated, all section references are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

In short, the amount of "tax" paid for highway use is determined based on both motor vehicle weight and number of miles traveled.

■ The Department concedes that the reference in ORS 825.474 to the charges as "taxes" does not conclusively establish that they are taxes for purposes of federal bankruptcy law. "[L]abels imposed by state law are not controlling" when determining what constitutes a "tax". *In re Camilli*, 94 F.3d 1330, 1331 (9th Cir.1996). That determination is made under federal law. *In re Belozer Farms, Inc.*, 199 B.R. 720, 723 (9th Cir. BAP 1996).

■ In *In re Lorber Industries of California, Inc.*, 675 F.2d 1062 (9th Cir.1982), the seminal case [2] in this circuit which defines the term "tax" for purposes of determining priority status in bankruptcy, the court held that:

> the elements which characterize an exaction of a 'tax' … are as follows:
>
> (a) An involuntary pecuniary burden, regardless of name, laid upon individuals or property;
>
> (b) Imposed by, or under authority of the legislature;
>
> (c) For public purposes, including the purpose of defraying expenses of government or undertakings authorized by it;
>
> (d) Under the police or taxing powers of the state. *Id.* at 1066.

■ Although having raised secondary arguments, the parties' primary disagreement is whether the charges imposed by the statute are "voluntary" or "involuntary." The *Lorber* court discussed this element at length. Under its facts the Los Angeles County Sanitation District (the "District") argued that sewer use fees it had assessed prepetition against the debtor were a "tax." The debtor argued that the charges were not taxes because it was not legally obligated to use the sewer system and thus could avoid imposition of the charges. The bankruptcy court agreed, holding that the debtor "was legally free not to use the system, and its voluntary use thus constituted an implied contractual debt." *Id.* at 1065. The district

court reversed on appeal, holding that the debtor's "use of the system was involuntary because no practical alternatives were available" and "the District [was authorized] to assess anyone who uses the District's services." *Id.* at 1065. The Ninth Circuit resolved this difference by stating:

> In determining if [the debtor's] use of the system was voluntary, and if it therefore consented to imposition of the fees, we are not free to consider the practical and economic factors which constrained [the debtor] to make the choices it did. The focus is not upon [the debtor's] motivation, but on the inherent characteristics of the charges … The Ordinance allows the District to assess surcharges only when District services are used by industrial customers and only in an amount proportionate to their use. The imposition of these charges thus was triggered by [the debtor's] decision to discharge into the system large amounts of industrial wastewater. Because the assessment resulted from [the debtor's] acts, it falls within the non-tax fee classification … *Id.* at 1066, 1067.

This circumstance is to be contrasted with that in *In re Camilli* in which the court held that a charge imposed by statute to reimburse the Industrial Commission of Arizona for workers' compensation benefits the Commission had to pay to one of the debtor's employees who was injured on the job was an "involuntary" payment. In *Lorber,* the obligation was created by the debtor's voluntary act of using the sewer system. In *Camilli* the debtor's obligation to reimburse the Commission was "the product of legislative fiat." *Id.* at 1333. "[A]t the time it arose … it was wholly beyond the control of the debtor." *Id.*

The Oregon motor carrier highway use charges covered by ORS 825.474–476 are comparable to the sewer charges in *Lorber.* They are only imposed on a carrier to the extent that it chooses to use the highway. It may choose not to use the highway and avoid the tax. Admittedly, it would be highly im-

---

**2.** This case was decided under § 64(a)(4) of the Bankruptcy Act, 11 U.S.C. § 104(a)(4) but the law has remained applicable under the Bankruptcy Code.

practical, if not impossible, for a motor carrier to avoid using the highway and to stay in business. But the *Lorber* court unambiguously rejected the district court's reasoning, which reflected that logic, that "Lorber's use of the system was involuntary because no practical alternatives were available." *Lorber* at 1065.

The Department argues that these charges should be deemed involuntary when considered as part of the total Oregon motor carrier and fuels tax statutory scheme. First, Oregon imposes a "fee" to obtain a certificate of authority to conduct carrier business in the state. It imposes another "fee" for an identification plate to be attached to each self-propelled or motor-driven vehicle operated under the permit. In addition, every motor carrier must pay the charges here at issue. Finally, all persons operating motor vehicles in Oregon "compensate this state partially for the use of its highways" by paying a tax of 24 cents a gallon on the use of vehicle fuels. ORS § 319.530. This tax is automatically included in the price of the fuel at the gas pump. Motor carriers' charges based on weight and mileage are specifically exempted from the 24 cents per gallon tax. ORS § 825.484(2). They either pay less at the gas pump or if they pay the 24 cents per gallon charge they may apply for a credit for the payment against the weight and mileage charges. The Department's argument is that through this statutory scheme all people who use self-propelled vehicles on Oregon highways have no choice but to pay to construct and maintain them. Each person carries the same burden and receives the same benefit. All the payments were imposed by the state through its "police and taxing powers", and are unquestionably for a public purpose. Ergo, they are "involuntary".

Interestingly, again the *Lorber* facts and findings confound that position. There the cost of constructing, operating and maintaining sewer lines and treatment facilities for all the citizens of Los Angeles County was met through a variety of ways, including collection from all users of ad valorem property taxes based on the assessed valuation of the user's property. This revenue system also included, as to nonresidential users only, an assessment which took into account the user's "contribution to flow, chemical oxygen demand and suspended solids." *Id.* at 1064. The nonresidential user was then given a credit against its ad valorem taxes. It is that assessment which was at issue.

The *Lorber* court recognized the dual nature of this revenue system. It stated:

[t]he parties agree that the revenue collected on an ad valorem basis constitutes taxation. The surcharge for excess industrial use is assessed under the same state statutory authority as the ad valorem taxes ... These similarities between the charges and taxes assessed by the District ... clearly indicate that the classification of these charges is a close question. On balance, however, we conclude that because of the characteristics of the charges, they are better classified as non-tax fees than as taxes. *Id.* at 1066–1067.

Under the *Lorber* test the third element which is required for a charge to be denominated a "tax" is that it must be for "public purposes". The Department appears also to argue that the Ninth Circuit, since *Lorber,* has changed its definition of "public purpose" and that this change compels treatment of the highway use charges as a tax.

As in *Lorber,* in *Camilli* the primary issue was whether the charges were "voluntary" or "involuntary". However, the *Camilli* court also discussed two Sixth Circuit cases, *In re Suburban Motor Freight, Inc.,* 998 F.2d 338 (6th Cir.1993) (*Suburban I*), and *In re Suburban Motor Freight, Inc.,* 36 F.3d 484 (6th Cir.1994) (*Suburban II*). It summarized the Sixth Circuit view of the *Lorber* "public purpose" element, standing alone, as "reach[ing] too broadly" and stated that that circuit "refined *Lorber's* 'public purpose' criterion to require (1) that the pecuniary obligation be universally applicable to similarly situated entities; and (2) that according priority treatment to a government claim not disadvantage private creditors with like claims." *Camilli* at 1334 *citing Suburban I,* 998 F.2d at 342.

The *Camilli* court did not, as the Department suggests, specifically adopt the additional *Suburban I* "public purpose" requirements, thus changing the *Lorber* "public

purpose" element. On the contrary, it said: "Because the obligation in this case meets the four additional requirements set forth by the Sixth Circuit in *Suburban I* as well as the criteria of *Lorber,* there is no need to decide whether the *Suburban I* requirements must be met in all cases." *Id.*

Even if the *Camilli* court could be said to have adopted the *Suburban* requirements for the "public purpose" element of the *Lorber* test and assuming that the Department is correct in its assertion that under our facts the pecuniary obligation of the use charges are "universally applicable to similarly situated entities" and that there are no private creditors with like claims which would be disadvantaged if the state were granted priority status, such facts do not lead inexorably to the conclusion that the highway use charges herein are "taxes". It simply means that the Department would have met one element, the "public purpose" element, of the *Lorber* test. It would still not have met the "voluntary" element of the test. Without fulfilling all four elements of the *Lorber* test the charges cannot be "taxes".

The Department's highway use charges are not "taxes". Consequently the charges are not entitled to treatment under § 507(a)(8)(E) as a priority debt. On that basis the court sustains the debtor in possession's objection to the Department's proof of claim. The Department will be allowed a general unsecured claim in the amount of $82,446.71. This opinion constitutes the court's findings of fact and conclusions of law; therefore, they will not be separately stated.