In re ARROW TRANSPORTATION CO. OF DELAWARE, Debtor–in–Possession.

State of Oregon, Department of Transportation, Appellant,

v.

Arrow Transportation Co. of Delaware, Appellee.

Bankruptcy No. 397–34556–PSH11.
Civ. No. 98–1465–FR.

United States District Court, D. Oregon.

Jan. 14, 1999.

Hardy Myers, Attorney General, Mary Lou Haas, Assistant Attorney General, Portland, Oregon, for appellant.

David W. Criswell, Ball Janik, LLP, Portland, Oregon, for debtor-in-possession/appellee.

## OPINION AND ORDER

FRYE, District Judge.

The matter before the court is the appeal by the State of Oregon, Department of Transportation, from the Memorandum Opinion of the United States Bankruptcy Court for the District of Oregon of August 6, 1998. The bankruptcy judge ruled that the Oregon Department of Transportation had a general unsecured claim because the obligation upon which the claim was based is a fee rather than a tax.

## BACKGROUND

This case arose from an objection by the debtor, Arrow Transportation Co. of Delaware (debtor Arrow), to a proof of claim filed by the Oregon Department of Transportation (ODOT). The bankruptcy court upheld debtor Arrow's objection, ruling that the weight and mile tax assessments against commercial vehicles operating on the highways of the State of Oregon pursuant to the laws of the State of Oregon are not taxes and therefore are not entitled to priority of payment in bankruptcy.

## FACTS

Debtor Arrow has operated as a motor carrier in the State of Oregon since 1931. Debtor Arrow has hauled bulk liquid chemicals on the highways of the State of Oregon pursuant to an operating authority issued by the predecessor to ODOT, the Oregon Public Utility Commission.

Pursuant to the laws of the State of Oregon, no for-fee or private carrier shall operate a motor vehicle for the transportation of persons or property on any public highway of the State of Oregon without being in compliance with Chapter 825 of the Oregon Revised Statutes. A carrier of persons or property for hire must possess a valid permit or certificate of authority from ODOT authorizing the proposed operation. ORS 825.100. The carrier must pay a fee of $300.00 to obtain a permit. ORS 825.180. A motor carrier operating in the State of Oregon must obtain identification plates or markers for each of its vehicles operated in connection with its permit or certificate of authority at a cost of $7.50 each. ORS 825.470(1)(a).

In addition to the imposition of fees for permits and identification plates, state law imposes a tax upon motor carriers. ORS 825.474 states, in part:

**Motor carrier tax for use of highways.** (1) In addition to other fees and taxes imposed by law upon carriers, there shall be assessed against and collected from every carrier a tax for the use of the highways, to apply to the cost of administration of this chapter and for the maintenance, operation, construction and reconstruction of public highways.

(2) The tax rate which shall apply to each motor vehicle shall be based upon the declared combined weight of the motor vehicle and in accordance with the weight group tax rates as shown in the tables set forth in ORS 825.476.

A motor carrier permit exempts the motor carrier from paying the 24 cents per gallon fuel tax at the point of purchase as required by state law of all persons who operate motor vehicles in the State of Oregon. ORS 319.530. Taken together, the fuel tax imposed pursuant to ORS 319.530 and the motor carrier tax imposed pursuant to ORS 825.474 require each vehicle traveling on the highways of the State of Oregon to pay a tax used to maintain and construct those highways.

As a motor carrier, debtor Arrow was required to file with ODOT monthly reports of the miles each of its vehicles had traveled in the State of Oregon and to pay a tax based upon the weight of each of the operating vehicles and the miles each had traveled on the highways of the State of Oregon pursuant to ORS 825.474.

On June 2, 1997, debtor Arrow filed a petition in bankruptcy. At the time the petition in bankruptcy was filed, debtor Arrow owed ODOT the sum of $75,326.38 for unpaid taxes for the two months immediately preceding the filing of the bankruptcy petition, and for penalties in the sum of $7,140.33. ODOT filed a proof of claim in the bankruptcy court contending that it had priority status for the unpaid taxes and accrued interest,

and had a general unsecured status for the penalties.

Debtor Arrow filed an objection to the claim of ODOT on the ground that the amounts owed to ODOT were not taxes but fees, and were therefore not entitled to priority of payment in the bankruptcy court.

In a Memorandum Opinion filed on August 6, 1998, 227 B.R. 183, the bankruptcy court concluded that "[t]he Department's highway use charges are not 'taxes' [and] are not entitled to treatment under § 507(a)(8)(E) as a priority debt." *Id.* at 187. The bankruptcy court concluded that the highway use tax did not meet the "involuntary pecuniary burden" element of the term "tax" set forth in the seminal case of *In re Lorber Indus. of Cal., Inc.*, 675 F.2d 1062, 1066 (9th Cir.1982).

## CONTENTIONS OF ODOT

ODOT contends that the bankruptcy court erred in determining that the highway use tax in ORS 825.474 was a fee rather than a tax. ODOT contends that the involuntary test enunciated in *Lorber* and used by the bankruptcy court is not appropriate in excise tax cases. Even using the involuntary test of *Lorber*, ODOT contends that there is no alternative, practical or impractical, for an Oregon trucking company engaged in the hauling of bulk chemicals or other property to use other than the Oregon highways.

## CONTENTIONS OF DEBTOR ARROW

Debtor Arrow contends that the bankruptcy court properly applied the *Lorber* test to determine that the highway use charge is a fee, and therefore not entitled to treatment as a priority tax in bankruptcy. Debtor Arrow contends that its business was not limited to the transportation of bulk liquid commodities. Debtor Arrow contends that it had the option of increasing its trucking business or decreasing its trucking business and focusing on other aspects of its business, such as washing truck tanks.

## APPLICABLE LAW

11 U.S.C. § 507(a) states, in part:

(a) The following expenses and claims have priority in the following order:

. . . .

(E) an excise tax on—

(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or

(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition; . . . .

11 U.S.C. § 507(a)(8)(E).

The United States Supreme Court has explained that taxes are "those pecuniary burdens laid upon individuals or their property for the purpose of defraying the expenses of government or undertakings authorized by it." *City of New York v. Feiring*, 313 U.S. 283, 285, 61 S.Ct. 1028, 85 L.Ed. 1333 (1941). An excise tax is a "tax imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege." *Black's Law Dictionary*, p. 506 (5th ed.1979).

In *Lorber, supra*, the Los Angeles County Sanitation District argued that sewer use fees assessed against a debtor prior to the petition in bankruptcy were a "tax." The circuit court defined the term "tax" for the purpose of determining priority status in bankruptcy explaining that:

[T]he elements which characterize an exaction of a "tax" . . . are as follows:

(a) An involuntary pecuniary burden, regardless of name, laid upon individuals or property;

(b) Imposed by, or under authority of the legislature;

(c) For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it;

(d) Under the police or taxing powers of the state.

675 F.2d at 1066.

The debtor had argued that its sewer charges were not taxes because the debtor was not legally obligated to use the sewer system, and the bankruptcy court agreed that the debtor "was legally free not to use the system, and its voluntary use thus consti-

tuted an implied contractual debt." *Id.* at 1065. The district court reversed on appeal, holding that the debtor's "use of the system was involuntary, because no practical alternatives were available." *Id.* The United States Court of Appeals for the Ninth Circuit reversed the district court:

> In determining if [the debtor]'s use of the system was voluntary, and if it therefore consented to imposition of the fees, we are not free to consider the practical and economic factors which constrained [the debtor] to make the choices it did. The focus is not upon [the debtor]'s motivation, but on the inherent characteristics of the charges.
>
> . . . .
>
> ... The imposition of these charges thus was triggered by [the debtor]'s decision to discharge into the system large amounts of industrial wastewater. Because the assessment resulted from [the debtor]'s acts, it falls within the non-tax fee classification. . . .

*Id.* at 1066–67.

In *In re Camilli*, 94 F.3d 1330 (9th Cir. 1996), the United States Court of Appeals for the Ninth Circuit concluded that the debtor's obligation to the industrial commission of the State of Arizona for workers' compensation benefits that the industrial commission paid to the debtor's employee was a nondischargeable excise tax. The debtor in *Camilli* failed to procure workers' compensation insurance as required by the laws of the State of Arizona, and was therefore required by the laws of the State of Arizona to repay monies paid to debtor's employee after an employee was injured at work and the employee was paid benefits by a statutorily-established Special Fund. The United States Court of Appeals explained:

> In *Lorber,* the debtor owed the local sewer district charges for the debtor's use of the sewer system to discharge industrial waste. In holding that the obligation was contractual in nature rather than "involuntary," we stressed in *Lorber* that the obligation itself was not created by the statute authorizing imposition of the fees. *Id.* at 1067. Rather, the obligation was created

by the debtor's voluntary act of using the system. *See id.* at 1067, n. 4.

Here, Camilli contends that her obligation is materially similar to that in *Lorber*, and the BAP majority agreed, holding that it was Camilli's "voluntary" decision not to purchase insurance that gave rise to this obligation. This holding is not, however, an accurate description of the legal effect of Camilli's failure to procure workers' compensation insurance in Arizona, even if that failure could be considered to be a "voluntary" act. The source of Camilli's obligation to repay the workers' compensation benefits in this case was not her failure to obtain insurance, but the statutorily-created obligation to reimburse the Special Fund once the Fund paid benefits to an uninsured employee. By contrast, in *Lorber* the event that triggered the charges was the voluntary use by the debtor of the sewer system. The obligation to repay the Fund in this case is thus a product of legislative fiat; at the time it arose, and the lien was established, it was wholly beyond the control of the debtor. 94 F.3d at 1333.

## ANALYSIS

The highway use tax was designated a tax by the Oregon legislature in ORS 825.474. In *Portland Van & Storage Co. v. Hoss,* 139 Or. 434, 9 P.2d 122 (1932), the Oregon Supreme Court concluded that:

> the business of transporting freight for compensation upon the state's highways may properly be made the subject of an occupation tax. A law requiring a license is primarily intended to regulate a particular calling or business, and not to raise revenue, while an occupation tax is primarily intended to raise revenue by that method of taxation. . . .

139 Or. at 443–44, 9 P.2d 122.

Whether a particular claim is entitled to priority treatment in a bankruptcy case is a federal question. *New Jersey v. Anderson,* 203 U.S. 483, 491, 27 S.Ct. 137, 51 L.Ed. 284 (1906). "[L]abels imposed by state law are not controlling" when determining what constitutes a "tax." *Camilli,* 94 F.3d at 1331. However, courts look to the

provisions of the state law giving rise to the claim in order to determine whether the obligation has the incidents of a tax. *See Feiring*, 313 U.S. at 285, 61 S.Ct. 1028.

Here, the bankruptcy court concluded that the highway use tax in ORS 825.474 does not meet the involuntary element of a tax set forth in *Lorber.* The bankruptcy court explained:

> The Oregon motor carrier highway use charges covered by ORS 825.474–476 are comparable to the sewer charges in *Lorber.* They are only imposed on a carrier to the extent that it chooses to use the highway. It may choose not to use the highway and avoid the tax. Admittedly, it would be highly impractical, if not impossible, for a motor carrier to avoid using the highway and to stay in business. But the *Lorber* court unambiguously rejected the district court's reasoning, which reflected that logic, that *"Lorber's* use of the system was involuntary because no practical alternatives were available." *Lorber* at 1065.

Memorandum Opinion of August 6, 1998, 227 B.R. at 185–86.

■ This court concludes that the involuntariness test in *Lorber* cannot be the determining factor in deciding whether an excise tax qualifies for priority under 11 U.S.C. § 507(a)(8)(E). Since an excise tax is, by definition, based upon a transaction which is voluntarily incurred, the application of the involuntariness test to an excise tax would render section 507(a)(8)(E) without meaning. *See, e.g., In re Park*, 212 B.R. 430 (D.Mass. 1997).

In *Lorber*, the United States Court of Appeals for the Ninth Circuit explained that "[t]he focus is not upon [the debtor's] motivation, but on the inherent characteristics of the charges." 675 F.2d at 1066. In this case, the charges to debtor Arrow pursuant to ORS 825.474 are a part of the overall scheme for collecting fuel taxes in the State of Oregon. The Oregon weight and mile tax in ORS 825.474 and the fuel tax in ORS 319.530, taken together, place an involuntary burden upon all who elect to drive on the highways in the State of Oregon "to enable the further construction of highways and to provide for the operation, preservation and maintenance of highways already built." ORS 825.007(2)(i).

■ It is not possible for a motor carrier in the State of Oregon to avoid using the highways and paying the weight and mile tax under ORS 825.474. While debtor Arrow could choose not to be a motor carrier in the State of Oregon, once debtor Arrow chooses to act as a motor carrier in the State of Oregon, the obligation to contribute to the maintenance of the public highways is imposed by legislative fiat.

At the time the obligation of debtor Arrow to ODOT arose, it was wholly beyond the control of debtor Arrow. The legislative scheme includes remedies to collect the obligation which are not available to all creditors. ORS 825.504. The taxes collected are used for the public purpose of the maintenance, operation, construction and reconstruction of highways for use by all who travel the highways of the State of Oregon.

This court concludes that the obligation of debtor Arrow pursuant to ORS 825.474 meets the *Lorber* elements to qualify as a tax. The claim by ODOT for debts incurred pursuant to ORS 825.474 is entitled to priority treatment under 11 U.S.C. § 507(a)(8)(E).

## CONCLUSION

The judgment of the United States Bankruptcy Court is reversed, and the case is remanded to the bankruptcy court for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.