**In re COTTAGE GROVE HOSPITAL, an Oregon non-profit corporation, Debtor.**

**No. 698–64406–aer11.**

United States Bankruptcy Court, D. Oregon.

Feb. 6, 2001.

Wilson C. Muhlheim, Muhlheim, Palmer & Wade, Eugene, OR, for Reorganized Debtor.

Tim Nord, Assistant Attorney General, Dept. of Justice, Salem, OR, for Oregon Employment Dept.

## MEMORANDUM OPINION

ALBERT E. RADCLIFFE, Chief Judge.

This matter comes before the court on the objection of the Reorganized Debtor (Debtor) to the claim of Oregon Employment Department (OED). The sole question is whether the OED's claim for reimbursement of unemployment benefits is a priority tax within the purview of 11 U.S.C. § 507(a)(8).[1] Before considering the facts in this case, an overview of Oregon's unemployment compensation scheme and employers' contributions thereto is in order.

*Oregon's Unemployment Compensation Trust Fund:*

Oregon has established a statutory scheme to provide benefits to unemployed workers. See ORS Ch. 657. In general, employees who have been laid off from their regular employment, but who remain available for work and actively seek employment are entitled to benefits. See ORS 657.155. All Oregon employers, with exceptions and exemptions not rele-

---

1. Unless otherwise noted, all subsequent statutory references are to Title 11 of the United States Code.

vant here, pay into the Unemployment Compensation Trust Fund (the Fund) to provide for the benefit of unemployed workers. Oregon law denominates such payments as "taxes". ORS 657.505(1). The Fund is administered by the OED. Payments are to be made quarterly. They are a percentage of payroll (percentage payments). The percentages are based on an employer's experience with respect to benefits paid from the Fund. *See*, ORS 657.430; ORS 657.435; and ORS 657.462.

In lieu of the percentage payments, nonprofit employers may elect to reimburse the Fund by making reimbursement payments as described in ORS 657.505(7)(a).[2] Like percentage payments, Oregon law denominates reimbursement payments as "taxes". *Id.*[3] Within thirty (30) days of the effective date of its election, the nonprofit employer must post security with the OED's director. ORS 657.505(7)(d). One type of allowable security is a surety bond. *Id.*[4]

ORS 657.505(8)(a), provides in pertinent part:

"At the end of each calendar quarter, . . . the director shall determine the amount of payments in lieu of taxes or reimbursement payments required under subsections (5), (6) and (7) of this section, and shall bill each employer for such amount."

Payment of any bill rendered under paragraph (a) of this subsection shall be made not later than the last day of the month immediately following the month in which such bill was mailed to the last known address of the employer or was otherwise delivered to it. The director may assess a nonprofit employing unit for past due taxes and such assessment shall be subject to the same interest, penalties, enforcement, appeal and any other provisions of this chapter that apply to taxes assess pursuant to ORS 657.681.

ORS 657.505(8)(c).

The Fund must be kept at adequate funding levels as determined by the director. ORS 657.459. This funding level determines an employer's percentage payment, ORS 657.462, and takes into account the amount of reimbursement payments owed. ORS 657.467. Reimbursement payments are included in the Fund and in any computation of the Fund's adequacy. *Id.* There is no private or self unemployment insurance option available in Oregon.

*Facts:*

The facts are undisputed. Debtor was a nonprofit employer which, in February, 1977, filed a Notice of Election to Reimburse in Lieu of Taxes, and consequently posted a surety bond. The election was never canceled. As a result of financial difficulties, debtor laid off many employees. They filed claims for unemployment

---

2. ORS 657.505(7)(a) provides in pertinent part:

[S]uch nonprofit employing unit may elect to make reimbursement payments into the Unemployment Compensation Trust Fund in an amount equivalent to the amount of regular benefits and one-half of extended benefits paid out to claimants who during the applicable base period were paid wages by such nonprofit employing unit.

3. The election to make reimbursement payments is made by written notice, is good for

two years, and is cancelable. ORS 657.505(7)(b) & (c).

4. The bond amount is determined as a percentage of the employer's total wages paid for covered employment for the four (4) calendar quarters immediately preceding the effective date of the election. ORS 657.505(7)(d). The percentages are set by statute. *Id.* The bond must be in force for at least two (2) years and is subject to adjustment by the director. ORS 657.505(7)(d)(A).

benefits, which the OED paid pursuant to the statutory scheme described above.

Debtor filed its Chapter 11 petition on July 27, 1998. Its amended plan was confirmed by an order entered on June 29, 1999.

At the time this matter was taken under advisement, the OED had filed an amended priority proof of claim in the sum of $436,576.73 for unpaid reimbursement payments. The claim amount reflected a $53,762.00 credit in May, 1999, from payment by Debtor's surety. Debtor did not dispute the claim amount.[5]

*Discussion:*

The only dispute is the classification of the unpaid reimbursement payments. The OED argues they are either "employment" or "excise" taxes under §§ 507(a)(8)(D) or (E).[6] Debtor argues they are more in the nature of a contractual obligation, thus, OED's claim is not entitled to priority and should be allowed only as a general, unsecured claim.

■■■ This appears to be a case of first impression in this district. In general, whether an obligation qualifies as a tax for § 507 purposes is a federal question. *In re Arrow Transportation Co.*, 229 B.R. 456 (D.Or.1999). This Court is not bound by state law labels. Instead, it must look at the characteristics of the debt. *Id.* In *In re Lorber Industries of California,* 675 F.2d 1062 (9th Cir.1982), the court described a tax[7] as:

(a) An involuntary pecuniary burden, regardless of name, laid upon individuals or property;

(b) Imposed by, or under authority of the legislature;

**5.** After this matter was taken under advisement, the OED amended its proof of claim seeking additional unpaid reimbursement payments. Since this opinion deals solely with the priority to be accorded to the OED claim, no attempt is made to determine any dispute which may exist concerning any additional amounts sought by the OED.

**6.** Sections 507(a)(8)(D) & (E) provide, in relevant part, as follows:

a) The following expenses and claims have priority in the following order:
(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—
(D) an employment tax on a wage, salary, or commission of a kind specified in paragraph (3) of this subsection earned from the debtor before the date of the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition;
(E) an excise tax on—
(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after

three years before the date of the filing of the petition; or
(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition.
There is no dispute that the reimbursement payments at bar fall within the three (3) year reachback period of either subsection.

**7.** On the other hand, a fee:

'is incident to a voluntary act, e.g., a request that a public agency permit an applicant to practice law or medicine or construct a house or run a broadcast station. The public agency performing these services normally may exact a fee for a grant which, presumably bestows a benefit on the applicant not shared by other members of society.' *National Cable Television Assn., Inc. v. United States,* 415 U.S. 336, 340–341, 94 S.Ct. 1146, 1149, 39 L.Ed.2d 370 (1974).
The chief distinction between a "tax" and a "fee" is that a tax 'is an exaction for a public purpose, while a fee relates to an individual privilege or benefit to the payer.' *U.S. v. River Coal Co., Inc.,* 748 F.2d 1103, 1106 (6th Cir.1984).
*In re Dawson,* 98 B.R. 519, 522 (Bankr.D.Or. 1989).

(c) For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it;

(d) Under the police or taxing power of the state.

*Id.* at 1066 (quoting *In re Farmers Frozen Food Company,* 221 F.Supp. 385, 387 (N.D.Cal.1963)).

■ Debtor argues that the first and third prongs have not been met. It maintains that the reimbursement obligation was voluntarily incurred when Debtor made the election to reimburse, thus, the payments are not an involuntary pecuniary burden.

The 9th Circuit has concentrated its voluntariness analysis on the source of the obligation. If the obligation was created by a voluntary act, such as using a sewer system, whereby user fees were consequent thereto, then the burden is voluntary and in the nature of a contract or fee. *Lorber, supra.* If, however, the obligation arose by legislative fiat, such as a noncomplying employer's statutory obligation to reimburse a worker's compensation fund, then the burden is involuntary. *In re Camilli,* 94 F.3d 1330 (9th Cir.1996).

In *In re Sacred Heart Hospital of Norristown,* 209 B.R. 650 (E.D.Pa.1997), the court construed the obligation to make reimbursement payments under the analogous Pennsylvania unemployment compensation laws. The court held the payments to be "involuntary". This Court agrees. Oregon's statutory scheme obligates an employer to pay into the Fund. Nonprofit institutions have two choices as to the form of payment, but they must pay nonetheless. Had Debtor not made the election to make reimbursement payments, it would have been required to make percentage payments.[8] *See also, In re Boston Regional Medical Center,* 256 B.R. 212 (Bankr.D.Mass.2000)(construing the analogous Massachusetts scheme).[9]

Further, it has been held that in the context of "excise" taxes, the "voluntariness" prong is a red herring, and is, in essence, inapplicable. *In re Arrow Transportation Co.,* 229 B.R. 456 (D.Or.1999).[10]

■ As to prong # 3 (the public purpose requirement), it is axiomatic that Oregon's unemployment compensation scheme is for a public purpose, that is, aiding displaced workers, and hence the public in general.

**8.** It is noteworthy that courts appear unanimous in holding that "percentage payments" in analogous state schemes are "taxes". *See e.g., In re Continental Minerals Corp.,* 132 B.R. 757 (Bankr.D.Nev.1991)(Nevada); *In re Skjonsby Truck Line, Inc.,* 39 B.R. 971 (Bankr.D.N.D.1984)(North Dakota); *In re Garden Inn Steak House, Inc.* 22 B.R. 830 (Bankr.N.D.Ohio 1982)(Ohio). It would be anomalous to hold percentage payments involuntary, (and thus taxes), yet reimbursement payments "voluntary", when both fund the same benefit scheme, especially when reimbursement payments are included in determining adequate funding levels. *See,* ORS 657.467.

**9.** In *Boston Regional,* the court performed the multi-factor "tax" analysis discussed above and below, concluding reimbursement payments under the Massachusetts scheme were

"taxes" for bankruptcy purposes. It went on to hold however that these taxes were not "employment" taxes under § 507(a)(8)(D)and thus not entitled to priority. There, the state did not argue the payments were alternatively "excise" taxes under § 507(a)(8)(E). Here, OED has made such an alternative argument, and Debtor has only challenged the threshold determination of whether the reimbursement payments are "taxes" at all. As such, this court need not reach the issue of whether the payments are "employment" or "excise" taxes.

**10.** "An excise tax is a 'tax imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege.' " *Arrow, supra* at 458 (quoting Black's Law Dictionary, p. 506 (5th Ed.1979)).

Some courts, notably the 6th Circuit Court of Appeals in two cases involving the same debtor, *In re Suburban Motor Freight, Inc.*, 998 F.2d 338 (6th Cir.1993) (*Suburban I*); *In re Suburban Motor Freight, Inc.*, 36 F.3d 484 (6th Cir.1994) (*Suburban II*), have refined the "public purpose" prong to further require that: 1) the pecuniary obligation be universally applicable to similarly situated entities; and 2) according the obligation priority treatment would not disadvantage private creditors with like claims. The 9th Circuit has not formally adopted the 6th Circuit's test, although it discussed and applied it in *Camilli, supra*, noting that since the *Suburban* criteria were met, it need not decide whether they were required in all cases.

Here, applying the *Suburban* criteria, payment into the Fund is universally required of all subject employers, that is, the state scheme is monopolistic. *Sacred Heart, supra.* Further, electing nonprofits are universally required to pay reimbursement payments. That there are several allowable forms of security does not change the universality of the obligation to reimburse.

As to disadvantaged private creditors with "like" claims, the only possible one would be the surety,[11] with a subrogation claim for amounts paid to the OED on the bond.[12] In *Suburban II*, the court did find that a surety, in the worker's compensation context, had a like claim on a bond posted by a self-insured employer.[13] In *Sacred Heart, supra*, the Court acknowledged some "likeness" of a surety's claim, but concluded the "other tax-like attributes ... outweigh this single 'non-tax' characteristic." *Id.* at 658. To hold otherwise, would make the "tax" status of reimbursement payments dependent on whether subrogation rights had attached to the security posted for the payment. No sound policy supports this distinction.[14]

Further, the requirement imposed upon employers, under Oregon law, to make percentage payments or reimbursement payments to the Fund is analogous to the requirements imposed upon employers to make payments under the Oregon Workers' Compensation Law to aid injured workers (see ORS Ch. 656). The 9th Circuit has already held that the duty of a non-complying employer to reimburse the state for workers' compensation benefits paid to an injured employee are in the nature of an excise tax. *In re Camilli*, 94 F.3d 1330 (9th Cir.1996). No sound public policy would support a determination that payments required under Oregon's Workers' Compensation laws are "taxes", while

11. The Court disagrees with Debtor's argument that Debtor's former employee's claims, based on unpaid personal benefit time are also "like" claims. Unpaid wages or benefits do not equate to unpaid obligations to Oregon's unemployment compensation system. The former is a contractual obligation to compensate for individual benefits, the latter, a statutory obligation to a designated fund to spread the risk of displaced workers statewide.

12. In Oregon, a surety, as well as the issuer of a letter of credit, has the right of subrogation. *In re XTI Xonix Technologies, Inc.*, 156 B.R. 821 (Bankr.D.Or.1993)(surety); ORS 75.1170 (issuer).

13. OED argues the surety's claim is not similar in that its rights derive from a contract with the Debtor for which it received consideration. Also, it provided no benefits to displaced workers. However, "[s]ubrogation is a doctrine of exact substitution, upon which the subrogee acquires the position, rights and liabilities of the subrogor." *Rusher v. Bunker*, 99 Or.App. 303, 311, 782 P.2d 170, 175 (1989).

14. In fact, Congress may have set its policy regarding subrogees in the priority claim context. Under § 507(d), they are denied priority status.

payments required to be made to the Fund do not have such priority.

*Conclusion:*

Whether denominated "employment" or "excise", the unpaid reimbursement payments at issue here are priority taxes under 11 U.S.C. § 507(a)(8)(D) or (E). Debtor's objection is overruled. A separate Order shall be entered.

This opinion constitutes the Court's findings of fact and conclusions of law; they shall not be separately stated.