ELECTRONIC CITATION:  2007 FED App. 0004P (6th Cir.)
File Name:  07b0004p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re:   ALBION HEALTH SERVICES, | ) |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| MICHIGAN UNEMPLOYMENT | ) |
| INSURANCE AGENCY, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | )   No. 06-8017 |
| | ) |
| JAMES W. BOYD, TRUSTEE, | ) |
| | ) |
| Appellee. | ) |
| _____ | ) |

Appeal from the United States Bankruptcy Court
for the Western District of Michigan.
No. 02-01745.

Argued:  November 8, 2006

Decided and Filed:  February 2, 2007

Before: PARSONS, SCOTT, and WHIPPLE, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:**  Thomas C. Johnson, OFFICE OF THE ATTORNEY GENERAL OF MICHIGAN, Grand Rapids, Michigan, for Appellant.  John T. Piggins, MILLER JOHNSON, Grand Rapids, Michigan, for Appellee.  **ON BRIEF:**  Thomas C. Johnson, OFFICE OF THE ATTORNEY GENERAL OF MICHIGAN, Grand Rapids, Michigan, for Appellant.  John T. Piggins, MILLER JOHNSON, Grand Rapids, Michigan, for Appellee.

## OPINION

MARY ANN WHIPPLE, Bankruptcy Appellate Panel Judge. The Michigan Unemployment Insurance Agency ("the Agency") appeals the bankruptcy court's order finding that its claim against Debtor Albion Health Services, a nonprofit employer, for reimbursements to Michigan's Unemployment Trust Fund is not entitled to priority status as an excise tax under 11 U.S.C. § 507(a)(8)(E). For the reasons that follow, the bankruptcy court's decision will be affirmed.

## I.  ISSUE ON APPEAL

Whether the bankruptcy court erred in finding that reimbursement payments owed to Michigan's Unemployment Trust Fund by a nonprofit employer are not excise taxes within the meaning of § 507(a)(8)(E).

## II.  JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel ("BAP") of the Sixth Circuit has jurisdiction to hear this appeal. The United States District Court for the Western District of Michigan has authorized appeals to the BAP, and neither party has timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). An order determining that a claim is not entitled to priority status is a final order. *See In re Kids Creek Partners*, 200 F.3d 1070 (7th Cir. 2000)(finding that a priority-fixing order is treated as a final order); *Volvo Commercial Fin. LLC v. Gasel Transp. Lines, Inc. (In re Gasel Transp. Lines, Inc.)*, 326 B.R. 683, 685 (B.A.P. 6th Cir. 2005) (finding an order determining that a claim is not entitled to administrative expense priority constitutes a final order).

The facts are not in dispute. The only issue before the Panel is the priority status of the Agency's claim. An order determining that a claim is not entitled to priority status is a question of law requiring *de novo* review on appeal. *Jones v. United States (In re Garcia)*, 955 F.2d 16, 17 (5th Cir. 1992). Under a *de novo* standard of review, the reviewing court decides an issue independently

of, and without deference to, the trial court's determination. *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001).

## III.  FACTS

There are no relevant facts in dispute with respect to this appeal.  Under the Michigan Employment Security Act ("MESA"), the State of Michigan maintains an unemployment compensation fund ("the Fund") that is administered by the Agency.  Laid off employees from both for-profit and nonprofit employers are eligible to collect benefits from the Fund.  All for-profit employers are required to make quarterly payroll-based contributions to the Fund. *See* Mich. Comp. Laws Serv. § 421.13.  However, nonprofit employers may elect to reimburse the Fund retrospectively for whatever claims are paid from the fund on account of their laid-off employees.  Mich. Comp. Laws Serv. §§ 421.13a and 421.13c.  Under Michigan law, a nonprofit employer who elects to become a reimbursing employer and also pays more than $100,000 remuneration per calendar year for employment must execute a surety bond, irrevocable letter of credit, or other security in an amount approved by the Michigan Employment Security Commission to secure payment of its reimbursement obligations. *See* Mich. Comp. Laws Serv. § 421.13a(4).

Debtor is a nonprofit corporation that owned a hospital in Albion, Michigan, and paid its employees over $100,000 per calendar year.  At all relevant times, Debtor had elected to be a reimbursing employer under § 421.13a.  It ceased operations and laid off all of its employees in early 2002, prompting a large number of claims by Debtor's former employees against the Fund.  The Agency made payments from the Fund to Debtor's former employees, and Debtor has failed to reimburse the Fund the amounts paid.  On February 5, 2002, Debtor filed for relief under Chapter 7 of the Bankruptcy Code, and the Agency filed its proof of claim for reimbursement of unemployment benefits that it has paid to Debtor's former employees.  The Agency seeks priority status for its claim as an excise tax under 11 U.S.C. § 507(a)(8)(E).  The Chapter 7 Trustee, the appellee herein, objected and filed a motion for summary judgment, arguing that the Agency's claim

is a general unsecured claim that is not entitled to a tax priority.[1] On March 16, 2006, the bankruptcy court granted the Trustee's motion, denying the Agency priority status for its claim, and the Agency timely appealed that decision.

## IV.    DISCUSSION

### A.    Overview of the Statutory Basis for the Agency's Claim

The Federal Unemployment Tax Act, 26 U.S.C. §§ 3301 *et seq.,* ("FUTA"), imposes an excise tax on employers based on total wages paid by them during the year with respect to employment in order to fund the federal unemployment compensation system. *See* 26 U.S.C. § 3301. "Employment" is defined, however, to exclude services performed for an income tax exempt nonprofit organization. 26 U.S.C. § 3306(c)(8). In *Massachusetts Division of Employment and Training v. Boston Regional Medical Center (In re Boston Regional Medical Center)*, 291 F.3d 111, 117 (1st Cir. 2002) ("*Boston Regional*"), the First Circuit explained the interplay between FUTA and a state's unemployment compensation system. While FUTA imposes a tax on most American employers according to formulae contained in §§ 3301 and 3306, under § 3302,

> any contribution made to a state's unemployment compensation fund serves as a credit against the federal tax. The federal government receives a portion of the total percentage to pay for the administration of the federal unemployment compensation system, but the majority goes to the state funds. The state funds, which must comply with requirements set forth in §§ 3302, 3303, 3304, and 3309, make payments to individuals who become unemployed through no fault of their own.

*Id.* at 117. Under § 3309,

> a state unemployment compensation system must permit, but not require, a government or nonprofit employer to make payments in lieu [of contributions]. . . . If an employer chooses to make payments in lieu [of contributions], it is also exempt from the requirement to make contributions to the state unemployment compensation

---

[1] The Trustee objected to both the amount of the claim and the priority asserted by the Agency. However, the parties agreed that the priority issue be resolved first and that it be resolved by motions for summary judgment.

fund. Instead, it agrees to reimburse the fund for any unemployment compensation payments made to recipients based on the recipients' work for the employer. Section 3309(a)(2) authorizes the states to take measures to ensure that employers making payments in lieu [of contributions] will meet their obligations."

*Id.*

Under Michigan law, each employer subject to MESA is required to make regular contributions to the Fund calculated as a percentage of wages paid by the employer. *See* Mich. Comp. Laws Serv. §§ 421.13 and 421.19. However, in compliance with FUTA, nonprofit employers may elect to reimburse the Fund by making payments in lieu of contributions in an amount equal to the full amount of benefits paid during any calendar quarter that is attributable to service in the employ of such organization and which is not reimbursable by the federal government. Mich. Comp. Laws Serv. § 421.13c(1). In addition to separate accounts for each employer, a "nonchargeable benefits account" or "solvency account" is maintained in the Fund to pay for such things as training benefits, benefits that are not chargeable to an individual employer, and deficiencies in an employer's separate account. Mich. Comp. Laws Serv. § 421.17. While a nonprofit employer never contributes towards the costs of administering the federal unemployment compensation system, if it chooses to make contributions to the state system, its contributions include a component used to pay for the costs of administering that system, including contributions to the solvency account. *See* Mich. Comp. Laws Serv. § 421.19. Michigan law provides the Michigan Employment Security Commission with discretion to require a nonprofit employer to execute and file with it a surety bond, irrevocable letter of credit, or other security as a condition of making payments in lieu of contribution. *See* Mich. Comp. Laws Serv. § 421.13d. And provision of such security is required where the nonprofit employer pays more than $100,000 remuneration per calendar year for employment. Mich. Comp. Laws Serv. § 421.13a(4).

As explained in *Boston Regional*:

The disadvantage to the nonprofit employer of [electing to become a reimbursing employer] is that if the nonprofit then lays off large numbers of workers within a given year, it is subject to the full actual costs of the unemployment insurance benefits of those workers. Those costs can far exceed in a given year what its required contribution based on its experience rating would have been. Even so, it is

not responsible for the cost of ensuring the fund's solvency. The nonprofit employer choosing payments in lieu is choosing to self-insure and bear its own risk. Indeed, the relevant federal legislative history refers to this option as the option to self-insure. *See* S. Rep. No. 91-752 (1970), reprinted in 1970 U.S.C.C.A.N. 3606, 3618 ("In effect, the nonprofit organizations would be allowed to adopt a form of self-insurance.").

*Boston Reg'l*, 291 F.3d at 118.


## B. Is the Agency's Claim Entitled to Priority Status?


In determining the priority issue before it, the Panel must be mindful of the Bankruptcy Code objective of securing equal distribution among creditors and "the complementary principle that preferential treatment of a class of creditors is in order only when clearly authorized by Congress." *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 126 S. Ct. 2105, 2109 (2006). In *Howard Delivery Service*, the Supreme Court instructed that provisions of the Bankruptcy Code allowing priorities "must be tightly construed" since "giv[ing] priority to a claimant not clearly entitled thereto is not only inconsistent with the policy of equality of distribution; it dilutes the value of the priority for those creditors Congress intended to prefer." *Id.* at 2116. The Supreme Court cautioned that any doubt concerning the appropriate characterization of a debt obligation for the purpose of affording it priority "is best resolved in accord with the Bankruptcy Code's equal distribution aim." *Id.*


In *Howard Delivery Service, Inc.,* an insurance company filed a claim for unpaid workers' compensation premiums, asserting that they qualified as "contributions to an employee benefit plan" entitled to priority under 11 U.S.C. § 507(a)(5). *Id.* at 2110. Although Congress left undefined the § 507(a)(5) term "employee benefit plan," the Supreme Court rejected the suggestion that it borrow the definition contained in the Employee Retirement Income Security Act of 1974 ("ERISA"). *Id.* at 2112-13. Recognizing that the ERISA definition is susceptible of a construction that would include workers' compensation plans, the Court decided to "follow the lead" of an earlier decision in noting that "'[h]ere and there in the Bankruptcy Code Congress has included specific directions that establish the significance for bankruptcy law of a term used elsewhere in the federal statutes.'" *Id.* at 2113 (citing *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 219,

116 S. Ct. 2106 (1996) (*"CF & I Fabricators"*)). Because no such directions are contained in § 507(a)(5), the Court declined to borrow a definition from "a statute designed without bankruptcy in mind" and instead considered the "essential character of workers' compensation regimes." *Id.* Finding the question to be close, the Court held that the insurance company's claim was not entitled to priority, resolving any doubt concerning the proper characterization of the debt in accord with the Bankruptcy Code's policy of equal distribution. *Id.* at 2109, 2116.

In this case, the Agency contends that § 507(a)(8)(E) of the Bankruptcy Code provides for priority in payment of the debt owed it by Debtor. That section assigns priority status to a governmental entity to the extent that the debt owed to it is

> an excise tax on –
>
> (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or
>
> (ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition[.]

11 U.S.C. § 507(a)(8)(E). The question before the Panel then is whether the reimbursement payments owed to the Agency for unemployment benefits paid to Debtor's employees are "excise taxes," or for that matter, whether they constitute a tax at all under § 507(a)(8).

The Bankruptcy Code does not define "excise tax" or "tax." Whether a particular obligation is a "tax" for bankruptcy purposes is a federal question and is not dependent upon the particular nomenclature used in a state's law. *City of New York v. Feiring*, 313 U.S. 283, 285, 61 S. Ct. 1028, 1029 (1941). "When state law, however, creates the obligation at issue, a court looks to that law to ascertain its attributes so that the court can determine its characterization under federal bankruptcy law." *Reconstituted Comm. of Unsecured Creditors v. N.J. Dept. of Labor (In re United Healthcare Sys., Inc.)*, 396 F.3d 247, 252 (3d Cir. 2005) ("*United Healthcare*") (citing *Feiring*, 313 U.S. at 285).

The Supreme Court has been faced with the issue of whether a particular government exaction was a "tax" entitled to a priority in bankruptcy on a number of occasions. In *Feiring*, the

court considered whether a state sales tax was a tax entitled to such priority under § 64 of the Bankruptcy Act. *Feiring*, 313 U.S. at 284-85. The Court defined "tax" for the purpose of determining priority status under the Bankruptcy Act as "those pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it." *Id.* at 285 (citing *New Jersey v. Anderson*, 203 U.S. 491, 27 S. Ct. 139 (1906), wherein the Court found the obligation owed to the state to be a franchise tax entitled to priority and not a contract debt since the amount to be paid is fixed by statute, is subject to control and change at the will of the state, and is imposed upon all corporations).

More recently, the Supreme Court addressed whether a liability arising under an Internal Revenue Code provision imposing a ten percent "tax" on any accumulated funding deficiency of pension plans should be treated as an excise tax entitled to priority under the Bankruptcy Code. *See CF & I Fabricators*, 518 U.S. at 216-19. The Court reviewed its earlier cases in which it considered whether a particular exaction was a tax for purposes of the priority provisions of the Bankruptcy Act and noted that "in every one of those cases the Court looked behind the label placed on the exaction and rested its answer directly on the operation of the provision using the term in question." *Id.* at 220. The Court distinguished a tax obligation, as defined in *Feiring* and *Anderson*, from a penalty on the basis that a tax provides for the support of government while a penalty is "'an exaction imposed by statute as punishment for an unlawful act.'" *Id.* at 224 (quoting *United States v. La Franca*, 282 U.S. 568, 572, 51 S. Ct. 278, 280 (1931)). Due to the "obviously penal character" of the exaction at issue, the Court found it was not a tax and not entitled to priority. *Id.* at 225.

Applying the principles articulated in *Anderson* and *Feiring*, other courts have added glosses to the Supreme Court's description of what exactions qualify as "taxes" for priority purposes in the bankruptcy context. The Ninth Circuit set forth a frequently cited four-prong test for determining whether a particular exaction should be characterized as a tax for bankruptcy priority purposes:

> (a) An involuntary pecuniary burden, regardless of name, laid upon individuals or property;

> (b) Imposed by, or under authority of the legislature;

(c) For public purposes, including the purposes of defraying expenses of government or undertakings authorized by it;

(d) Under the police or taxing power of the state.

*County Sanitation Dist. No. 2 v. Lorber Indus. of Cal., Inc.(In re Lorber Indus. of Cal., Inc.)*, 675 F.2d 1062, 1066 (9th Cir. 1982).

The Sixth Circuit has criticized the *Lorber* test as insufficient in distinguishing taxes from other types of payments owed the government, such as fees for service or criminal or civil penalties. *See Yoder v. Ohio Bureau of Workers' Comp. (In re Suburban Motor Freight, Inc.)*, 998 F.2d 338 (6th Cir. 1993) ("*Suburban I*"); *Ohio Bureau of Workers' Comp. v. Yoder (In re Suburban Motor Freight, Inc.)*, 36 F.3d 484 (6th Cir. 1994) ("*Suburban II*"). The court noted that "the test, in particular its 'public purpose' requirement, did not limit in any meaningful way the circumstances under which government claims would be entitled to priority" since "all money collected by the Government goes toward defraying its expenses, and is used for public purposes." *Suburban II*, 36 F.3d at 488. Thus, "to say as a matter of definition that all taxes are collected for public purposes does not allow the Government to say that all funds collected for public purposes are taxes. . . ." *Suburban I*, 998 F.2d 338, 342 (6th Cir. 1993). While the Sixth Circuit agreed that satisfaction of the *Lorber* test is necessary to qualify a claim for priority treatment as an excise tax, it identified two additional factors that refine the public purpose element: "(1) that the pecuniary obligation be universally applicable to similarly situated entities; and (2) that according priority treatment to the government claim not disadvantage private creditors with like claims." *Suburban II,* 36 F.3d at 488.

In *Suburban II*, the court was faced with the Ohio Bureau of Workers' Compensation's claim for reimbursement of payments made to claimants necessitated by Suburban's failure to pay premiums when it was a participant in the state insurance fund and by its failure to pay claims which arose when it was a self-insured employer. *Id.* at 486. Although the court had previously held in *Suburban I* that the Bureau's claim for unpaid workers' compensation premiums was entitled to priority as an excise tax, it refused to extend that holding to the Bureau's reimbursement claims. With respect to reimbursement payments necessitated by Suburban's failure to pay premiums, the

court explained that if Suburban "had paid its workers' compensation premiums, it would not have incurred any additional liability for reimbursement for claims payments made on its behalf." *Id.* at 489. Because its liability arose solely by virtue of its default, the court concluded that the liability was not "universally applicable to similarly situated persons or firms" and that the lack of universality prevented the Bureau's claim from being accorded priority treatment. *Id.* With respect to reimbursement payments as a result of Suburban's default as a self-insured employer, sureties had issued bonds so that Suburban could be self-insured. Both the Bureau and the sureties had satisfied Suburban's compensation claims, and both sought reimbursement from Suburban. The court found that it would be "unfair and without statutory justification" to allow priority status to the government's claim and to leave "unpaid private insurers to languish along with the rest of the unsecured creditors." *Id.* As such, the court denied the Bureau priority status, concluding that "the non-tax characteristics of Suburban's liability for reimbursement claims payments predominate over its tax characteristics, and the Bureau's claim more closely resembles a subrogation claim than a universally applicable tax." *Id.*

Although the Sixth Circuit has not addressed the specific issue of whether reimbursement payments owed to a state's unemployment trust fund by a nonprofit employer qualify as an excise tax entitled to priority under § 507(a)(8)(E), several other courts have with mixed results. However, the two courts of appeals that have addressed the issue both found the question to be close but concluded that the obligation to make such payments was not a "tax" within the meaning of the bankruptcy statute. *See Boston Reg'l*, 291 F.3d at 114; *United Healthcare*, 396 F.3d at 248.

In *Boston Regional*, the First Circuit found that the obligation to make prospective periodic contributions differed significantly from the obligation of electing nonprofit employers to make retrospective reimbursement payments in lieu of contributions in that the former also "cover[s] a share of the costs of administering the system, of supplying additional benefits such as training, and of keeping the system solvent despite others' defaults" while the latter simply "reimburse[s] the fund for payments attributable to them, but not for administrative costs, additional benefits, or the solvency margin." *Boston Reg'l,* 291 F.3d at 122. The fact that reimbursement payments merely compensate for the costs imposed by a particular participant and do not serve to sustain a government undertaking as a whole supported a finding that reimbursement payments are not a tax

but rather are "a different kind of obligation that a nonprofit employer is permitted to assume in place of a tax."[2]  *Id.*  But what "tip[ped] the scales" for the court was the option that the state law gave to the state agency to require a nonprofit employer to provide a surety bond to secure reimbursing payments.  The court reasoned that this factor weighed against treating reimbursement payments as a tax since the state "can protect itself in advance against unpaid payments in lieu, as it cannot against unpaid income taxes."  *Id.* 123.  After all, an important reason for giving a priority in bankruptcy to taxes is that the taxing authority "cannot choose its debtors, nor can it take security in advance of the time that taxes become due."  *Id.* at 122.  (quoting H.R. Rep. No. 95-595, at 190 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6150).  The court found that by not requiring a surety bond, the state accepted the risk that some reimbursement payments will not be made when nonprofit employers become insolvent and that the state's unemployment fund, and not the employer's unsecured creditors, should bear the cost of making up that deficiency.  *Id.* at 123.

In *United Healthcare*, the Third Circuit also found that a nonprofit employer's obligation to make reimbursement payments was not a tax for bankruptcy purposes.  *United Healthcare*, 396 F.3d at 258.  The court "follow[ed] the lead of the Supreme Court" and employed a functional examination that focused on the characteristics and effects of the obligation.  *Id.* at 255.  While the court found that the *Lorber/Suburban* factors were helpful in this analysis, it determined that it should not be constrained by those factors and indicated that such an examination "should be flexible enough to allow for consideration of any relevant factor."  *Id.*  As in *Boston Regional*, the court found significant the fact that reimbursement payments, although related to unemployment compensation contributions, are not the same obligation, but instead are distinct obligations.  *Id.* at 258.  "They do not create one obligation that is applied to all New Jersey employers."  *Id.*  at 261. This distinction, and specifically the fact that, unlike contributions, payments in lieu of contributions reimburse the state for unemployment benefits actually paid and do not raise funds to support a general governmental undertaking, led the court to conclude that, rather than a tax, the obligation "is more like a promise in exchange for the privilege of employing individuals in the state without being required to pay state unemployment compensation contributions."  *Id.* at 260.

---

[2]  The court had earlier noted that, although the Supreme Court has distinguished a tax from a debt or a penalty, these three categories do not cover all possible government claims in bankruptcy proceedings.  *See Boston Reg'l*, 291 F.3d at 120-21.

The Third Circuit also found that *National Cable Television Association, Inc. v. United States*, 415 U.S. 336, 94 S. Ct. 1146 (1974), although decided in a different context, "further illuminate[d] the non-tax character of the reimbursement obligation." *United Healthcare*, 396 F.3d at 260. In that case, the Supreme Court pointed out that both a "disregard [of] benefits bestowed by the Government on a taxpayer" and the government's ability to manipulate the assessment are indicative of a tax. *Nat'l Cable Television Assoc., Inc.*, 415 U.S. at 340-41. By contrast, a situation in which the government exaction is exchanged for a benefit not shared by others indicates that the debt is not for a tax. *Id.* As the Third Circuit then noted:

> [The state], in demanding reimbursement, may not disregard the benefits it bestowed. In fact, the reimbursement obligation directly is linked to the benefits it paid. Non-profit employers enjoy a benefit not shared by other employers, as they may operate in the state without making quarterly contributions to the state unemployment compensation fund. Additionally, the state cannot manipulate a reimbursement obligation to encourage or discourage certain activity. Again, under the reimbursement program, the government pays out benefits, and the non-profit employer simply refills the government's coffers.

*United Healthcare*, 396 F.3d at 260.

In this case, the parties do not dispute that the second and fourth *Lorber* factors are satisfied, that is, that Debtor's obligation to make reimbursement payments is imposed by law under the police or taxing power of the state. And although the Trustee argues that the first factor – that the obligation is involuntary – is not satisfied since it was Debtor's choice to elect to be a reimbursing employer, the Panel disagrees. Debtor's obligation is involuntary in that state law requires all nonprofit employers to contribute to the Fund either as a contributing employer or as a reimbursing employer. And all reimbursing employers are required to reimburse the Fund for benefits paid to its laid-off employees.

The Agency contends that the third factor, the public purpose element, is also met as Debtor's payments provide funds that assist unemployed persons to meet their financial obligations and maintain their spending power, which, in turn, promotes general economic stability. The Agency also argues that the additional *Suburban* factors are satisfied. Specifically, it argues that Debtor's obligation is universally applicable in that it imposes an unemployment tax on all employers and that

a nonprofit employer's election to make reimbursement payments in lieu of regular periodic contributions merely alters the manner in which the tax is paid. In addition, the Agency contends that allowing its claim a tax priority will not disadvantage private creditors since there are no private insurance options for providing unemployment compensation coverage in Michigan and no private creditors that have a statutory duty to pay unemployment benefits.

The Agency relies on two cases in which the court found that a nonprofit employer's reimbursement payments were taxes.[3] *See Sacred Heart Hosp. of Norristown v. Pa. Dept. of Labor and Indus. (In re Sacred Heart Hosp. of Norristown)*, 209 B.R. 650 (E.D. Pa. 1997)*; In re Cottage Grove Hosp.*, 265 B.R. 241 (Bankr. D. Or. 2001). In *Sacred Heart Hospital,* the court found relevant several reasons that taxes receive priority in bankruptcy, specifically, that taxes benefit the public while ordinary debt payments benefit only the creditor and those closely associated with the creditor, and that the government is an involuntary creditor of the debtor that cannot take security in advance of the time that taxes become due. *In re Sacred Heart Hosp. of Norristown*, 209 B.R. at 654-55. Finding that the reimbursement payments under the state's statute are involuntary, the court focused its analysis on the public purpose prong of the *Lorber/Suburban* test. The court explained that the payments benefit the public "because compensating unemployed workers reduces the chances of their becoming poor and making demands on the federal and state welfare systems and thus all taxpayers." *Id.* at 656. It also found, without further discussion, that the reimbursement obligation is universally imposed on all employers. *Id.* at 658. Although the court recognized that the state's requirement that certain employers execute a bond or post security to guarantee the reimbursement

---

[3] The Agency also relies on a third case in which the bankruptcy court found reimbursement payments owed to the Michigan Uninsured Employers' Security Fund for workers' compensation benefits paid by it to be excise taxes entitled to priority. *Michigan Uninsured Employers' Sec. Fund v. Hynes (In re Hynes)*, 229 B.R. 405 (Bankr. W.D. Mich. 1998). In that case, the workers' compensation benefits were paid by the state as a result of the debtor's failure to maintain workers' compensation insurance or to obtain authorization to be self-insured. In finding that the *Suburban* factors were satisfied, the court stated that the reimbursement obligation "is universally applicable to uninsured employers." *Id.* at 409. It made no attempt, however, to distinguish its holding from the Sixth Circuit's holding in *Suburban II* that a reimbursement obligation that arises solely by virtue of the debtor's default is not universally applicable to similarly situated persons. Nevertheless, it appears to have simply defined "similarly situated persons" more narrowly ("uninsured employers") than the manner in which the Sixth Circuit used the terms (employers generally).

payments was a non-tax characteristic, the court concluded that this non-tax characteristic was outweighed by the other tax-like attributes of the state's system.

Similarly, in *Cottage Grove Hospital*, the court found that, notwithstanding a choice as to the form of payment, payment into the unemployment compensation fund is universally required of all subject employers. *In re Cottage Grove Hosp.,* 265 B.R. at 246. Thus, the court found that the *Suburban* criteria of universal treatment for similarly situated persons was met. In addition, the debtor had posted a surety bond in order to elect to be a reimbursing employer, and the surety had a subrogation claim for amounts paid to the state on the debtor's bond. Although the court recognized that the surety may be a "disadvantaged private creditor[] with [a] 'like' claim[]" as the 6th Circuit found in *Suburban II*, it declined to make the "tax" status of reimbursement payments dependent on whether subrogation rights had attached to the security posed for the payment. *Id.* at 246. It further noted that, under 11 U.S.C. § 507(d), Congress denied priority status to subrogees in the priority claim context. *Id.* at n.14.

The Panel believes that the functional approach engaged in by the First and Third Circuits, using the six factors outlined in *Lorber* and *Suburban II* as a guide, sets forth the type of analysis required under the Supreme Court precedent discussed above when a court must determine whether a particular government exaction is a tax for priority purposes under the Bankruptcy Code. The courts in both *Sacred Heart Hospital* and *Cottage Grove Hospital* failed to undertake such an analysis. In both cases, the courts failed to distinguish between contributions and payments in lieu of contributions in finding *Suburban II*'s universality criteria satisfied. As a result, they failed to focus on "the operation of the provision using the term in question," and thus failed to consider the characteristics and effects of reimbursement payments in lieu of contributions. *CF & I Fabricators*, 518 U.S. at 220-21.

While reimbursement payments in lieu of contributions made by a nonprofit employer under MESA certainly have some tax characteristics, engaging in a functional examination of the obligation and its source reveals its non-tax character. As similarly found by the First and Third Circuits, reimbursement payments and contributions under Michigan law are distinct obligations. *See* Mich. Comp. Laws Serv. §421.13a(1) (providing that "[a]ny nonprofit organization . . . shall pay

contributions as a contributing employer pursuant to section 13, unless it elects to make reimbursement payments in lieu of contributions as a reimbursing employer pursuant to sections 13a to 13c."). Under Michigan law, a nonprofit employer's reimbursement obligation is limited to unemployment benefits actually paid. No part of the reimbursement payment is used to support a general governmental undertaking, such as, administering the state unemployment system. Unlike a contributing employer who must contribute regardless of whether it has former employees receiving benefits, a reimbursing employer pays only when benefits are paid to its former employees and only reimburses the state for the cost that particular employer caused the state to bear. The Third Circuit's conclusion that the effect of an employer electing to make reimbursement payments is "more like a promise in exchange for the privilege of employing individuals in the state without being required to pay state unemployment compensation contributions" is persuasive. *United Healthcare*, 396 F.3d at 260. Thus, reimbursement payments under MESA are better characterized as an alternative to paying taxes rather than as an alternative method of paying a tax, as contended by the Agency. *See id.* at 258.

Moreover, in *Suburban II*, the court found that because the employer's liability "arises solely by virtue of its default," it is not a liability "universally applicable to similarly situated persons or firms" and thus prevents the Bureau's claim from being accorded priority treatment. *Suburban II*, 36 F.3d at 489. Here, the Agency's claim arises by virtue of Debtor's election not to pay the state unemployment compensation tax, but instead to reimburse the state for unemployment compensation payments attributable to service relating to employment with Debtor if and when such payments are made. It is not a liability universally applicable to all employers or even to all nonprofit employers. As in *Suburban II*, this lack of universality prevents the Agency's claim from being accorded priority treatment.

Although the Agency also argues that allowing its claim a tax priority will not disadvantage private creditors, under Michigan law, the execution of a bond or other security is required of certain nonprofit employers and the state is otherwise given discretion to require such security of nonprofit employers to ensure payment of a particular employer's reimbursement obligation. The Sixth Circuit found that affording priority status to the state's claim in a similar circumstance would indeed disadvantage private creditors in a manner that would be "unfair and without statutory justification."

*Suburban II*, 36 F.3d at 489. In any event, the ability to require security for the obligation undertaken by a nonprofit employer electing to make reimbursement payments is an indication of the non-tax character of the obligation. *See id.*; *Boston Reg'l,* 291 F.3d at 122-23; *In re Sacred Heart Hosp. of Norristown*, 209 B.R. at 656 n.8. Although it is true that no surety is involved in this case, the Agency agrees that it had the ability to require a surety bond. As in *Boston Regional,* by not doing so, the state accepted the risk that some reimbursement payments will not be made when nonprofit employers become insolvent. *See Boston Reg'l ,* 291 F.3d at 123. The Panel's determination of whether Debtor's liability to the Agency is a tax cannot be based on the Agency's decision to require a bond or not. Instead the Panel must consider the operation of the statutory provisions under which Debtor's liability arises, provisions that clearly provide the Agency the ability to require a bond or other surety. *See CF & I Fabricators*, 518 U.S. at 220.

The Panel also rejects the Agency's argument that because of the close relationship between FUTA and MESA and because FUTA refers to the obligations of employers to contribute to the federal unemployment compensation system as "excise taxes," a nonprofit employer's reimbursement obligation is an "excise tax." Under FUTA, an excise tax is paid on wages with respect to "employment." 26 U.S.C. § 3301. FUTA excepts from the definition of "employment" service performed in the employ of a nonprofit employer. 26 U.S.C. § 3306(c)(8). Furthermore, the Supreme Court has instructed that courts must look behind labels placed on exactions in determining whether the exaction is a tax for priority purposes in bankruptcy. *CF & I Fabricators,* 518 U.S. at 220; *see Howard Delivery Serv., Inc.*, 126 S. Ct. at 2113 (refusing to borrow a definition from a statute designed without bankruptcy in mind and focusing instead on the "essential character" of workers' compensation regimes in determining priority status of the creditor's claim for unpaid premiums). As the Third Circuit explained, the role of FUTA in the Panel's inquiry "is limited to its mandate that states must provide non-profit employers with a reimbursement obligation option. That mandate still leaves open the question surrounding the nature of this obligation." *United Healthcare*, 396 F.3d at 260.

## V.  CONCLUSION

A claim against a nonprofit employer for reimbursement payments under MESA is analogous to the claim for reimbursement of workers' compensation payments under Ohio law, an obligation the Sixth Circuit has determined more closely resembles a subrogation claim than a universally applicable tax. *See Suburban II*, 36 F.3d at 489.  Because the non-tax characteristics of the Debtor's reimbursement obligation predominate over its tax characteristics, and because any doubt concerning its proper characterization for purposes of affording the debt priority status should be resolved "in accord with the Bankruptcy Code's equal distribution aim," *Howard Delivery Serv., Inc.*, 126 S. Ct. at 2116, the bankruptcy court did not err in denying the Agency's claim priority status under 11 U.S.C. § 507(a)(8)(E).  The bankruptcy court's decision is, therefore, AFFIRMED.